**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

DEDE STRATTON,

                        Plaintiff,                             **Case 5:13-CV-00147-DCR**

v.

PORTFOLIO RECOVERY                        **DEFENDANT PRA'S MOTION FOR**
ASSOCIATES, LLC,                            **SUMMARY JUDGMENT AND**
                                     **MEMORANDUM IN SUPPORT**

                              Defendant.
_____)

Defendant, Portfolio Recovery Associates, LLC ("PRA"), hereby files this Motion for Summary Judgment on all of Plaintiff, Dede Stratton's ("Ms. Stratton"), claims against it. As grounds for this Motion, PRA states as follows:

## I.    <u>INTRODUCTION</u>

For six separate reasons, PRA is entitled to summary final judgment on Ms. Stratton's Amended Complaint which alleges PRA violated sections 1692f(1), 1692e(2)(A) and 1692e(5) of the Federal Fair Debt Collection Practices Act (the "FDCPA"). [D.E. 10]. Ms. Stratton asserts that PRA violated the FDCPA by filing a state court Collection Lawsuit which sought 8% prejudgment interest on her charged-off GE Money Bank ("GE") credit card account (the "Account"). Ms. Stratton alleges that because GE ostensibly waived the right to charge 21.99% contract interest, PRA allegedly violated the FDCPA by asserting in its Collection Lawsuit that it was entitled to 8% prejudgment interest. As set forth herein, Ms. Stratton is wrong, and PRA is entitled to summary final judgment on all of her claims as a matter of law.

In November 2013, this Court granted PRA's motion to dismiss Ms. Stratton's Amended Complaint finding that even if GE waived the right to contract interest, PRA was still entitled to prejudgment interest at the lesser rate of 8% set by KRS 360.010. The Sixth Circuit reversed,

holding that under Kentucky law, if GE waived the right to contract interest, KRS 360.010 precluded PRA, as GE's assignee, from seeking any prejudgment interest.

Now that discovery has been completed, PRA has established six separate reasons why it is entitled to summary final judgment on all of Ms. Stratton's claims. First, the choice of law provision in Ms. Stratton's GE Credit Card Agreement requires that Utah law be applied to determine whether PRA was entitled to prejudgment interest. In Kentucky, when prejudgment interest is sought as a means of collecting damages, it is a substantive issue. Because the Credit Card Agreement has a Utah choice of law provision, PRA's entitlement to prejudgment interest is a substantive issue governed by Utah Code Ann. § 15-1-1, not KRS 360.010. Utah Code Ann. § 15-1-1 provides for 10% prejudgment interest on liquidated amounts due, and does not contain the same language of KRS 360.010 that the Sixth Circuit held prevented PRA from seeking prejudgment interest. Therefore, because Utah law applies, PRA properly asserted it was entitled to prejudgment interest in its Collection Lawsuit, this Court need not engage in any further analysis, and PRA is entitled to summary final judgment.

Second, under either Utah or Kentucky law, Ms. Stratton cannot meet her burden of proving that GE waived its right to seek contract interest. Initially, the GE Credit Card Agreement governing Ms. Stratton's Account contains a "non-waiver" clause which states that GE does not waive any right unless there is a signed writing. Because Ms. Stratton presented no signed writing in discovery, she has no evidence of GE's express waiver of the right to charge contract interest. And, the existence of the "non-waiver" clause means that her alleged evidence of an implied waiver through GE's conduct is insufficient as a matter of law.

Even assuming Ms. Stratton could satisfy her burden of proof by establishing GE impliedly waived its right to contract interest (which she cannot because the non-waiver clause

requires an express waiver), Ms. Stratton's "evidence" of an implied waiver is also insufficient as a matter of law. Specifically, Ms. Stratton argues that GE impliedly waived the right to charge contract interest because GE charged-off Ms. Stratton's Account, and because the balance due on Ms. Stratton's Account was the same amount when GE charged-off her Account as when GE sold the Account to PRA several months later. The fact that GE charged-off the Account and did not post any interest to Ms. Stratton's Account balance, however, is not evidence of an implied waiver. To the contrary, the only evidence before the Court establishes that banks may charge-off and not post interest to an account without waiving their right to retroactively charge contract interest. Thus, because Ms. Stratton cannot establish that GE even impliedly waived its right to contract interest, PRA was entitled to request prejudgment interest in its Collection Lawsuit. Accordingly, this Court need not engage in any further analysis, and PRA is entitled to summary final judgment.

Third, because Utah law allowed PRA to seek 10% prejudgment interest and GE did not waive the right to seek contract interest at 21.99%, PRA could lawfully seek interest at 8%. Simply put, seeking less than the amount to which PRA was entitled is not false, deceptive, misleading, unfair, or unconscionable in violation of the FDCPA, and PRA is therefore entitled to summary judgment.

Fourth, even if this Court concludes that PRA was not entitled to request prejudgment interest, this Court may still determine that PRA did not violate the FDCPA. The Sixth Circuit's only holding which is binding on this Court is the Sixth Circuit's interpretation of KRS 360.010. Because this case was before the Sixth Circuit on PRA's Motion to Dismiss, the remaining portion of the Sixth Circuit's Opinion, which held only that Ms. Stratton's Amended Complaint stated "plausible" FDCPA claims, was mere dicta. Thus, as set forth below, even if PRA was not

entitled to prejudgment interest in its Collection Lawsuit, PRA is still entitled to summary judgment on Ms. Stratton's 1692e and 1692f claims.

Specifically, PRA is entitled to summary judgment on Ms. Stratton's 1692f(1) claims because that section does not apply to the facts of this case. Rather, 1692f(1) only prohibits the charging of fees that are not contemplated by the credit agreement between the parties. But, it is not a 1692f(1) violation to request a fee allowed by the original credit agreement, even if the original creditor waived the right to that fee. Thus, because the Credit Card Agreement allowed the imposition of interest, even if GE waived that right, PRA did not violate section 1692f(1).

Fifth, even if PRA was not entitled to prejudgment interest, because PRA sought interest in a Collection Lawsuit utilizing the judicial process, PRA did not violate sections 1692e or 1692f because asserting a facially legitimate entitlement to interest in a lawsuit is not an "unfair or unconscionable means" to collect a debt, or a "false, deceptive, or misleading representation or means in connection with the collection of any debt." As the Eleventh Circuit recently held, it is not an FDCPA violation to take a legitimate legal position in a state court case, because filing a facially legitimate claim is not unfair or unconscionable, and disagreement is the nature of litigation.

Finally, even if the Court determines GE waived its right to collect contract interest and that PRA's request for interest in the state court complaint gives rise to a potential FDCPA violation, the FDCPA's bona fide error defense completely bars Ms. Stratton's claims, and PRA is entitled to summary final judgment as a matter of law.

## II.   FACTUAL BACKGROUND

### A.   Ms. Stratton's Credit Card Account with GE.

On September 14, 2007, Ms. Stratton opened a Lowe's branded, GE credit card Account. Ms. Stratton used the Account for several months and then failed to make payments for six consecutive months. The last Account statement had a billing date of December 19, 2008 – which is the date that GE charged off the Account. The amount charged-off was $2,630.95. The available credit card statements show an APR interest rate of 21.99%.[1]

At the time of her default, the "GE Money Bank Credit Card Agreement Retail Instalment Credit Card Agreement" (the "Credit Card Agreement") included a specific provision allowing a 21.99% interest rate, stated that Utah law applied, and included a non-waiver clause. Specifically, the Credit Card Agreement provided, in part, as follows:

**GE MONEY BANK**
**CREDIT CARD AGREEMENT**
**RETAIL INSTALMENT CREDIT AGREEMENT**
**Nonnegotiable Consumer Note**

**1. GENERAL.** This Agreement ("Agreement") governs your Lowe's credit card account ("Account"). In this Agreement and your billing statement ("Statement"), "we", "us", and "our" means GE Money Bank, 4246 South Riverboat Road, Suite 200, Salt Lake City, UT 84123-2551; "you" and "your" means all persons who we approve to use the Account; and "Card" means your Lowe's Credit Card. The effective date of this Agreement ("Effective Date") will be the earlier of (i) the date you submit an Account application that is approved by us, or (ii) the first date that you or someone authorized by you uses the Account [in NY, the first date that you or someone authorized by you signs a sales slip or memorandum indicating a Purchase (as defined herein) on the Account].

**2. USE OF ACCOUNT.** You may use your Account to purchase goods or services ("Purchases"), up to any credit limit we may establish ("Credit Limit"). We may decline to authorize any Purchase or change your Credit Limit at any time. You may use your Account only for personal, family or household purposes.

**3. PROMISE TO PAY.** You promise to pay us for all credit that we extend on your Account for Purchases and all other amounts owed to us under the terms of this Agreement.

**4. FINANCE CHARGES.**
**A.** For each billing period in which a Finance Charge is imposed, the amount of the Finance Charge is the total of (i) the amount of the Finance Charge calculated during the current billing period, plus (ii) if you had a balance during the prior billing period, the amount of the Finance Charge that was calculated on that balance during the prior billing period but not imposed in that billing period. The Finance Charge for each billing period is calculated by applying the Periodic Rate in effect during that billing period to the balance subject to Finance Charge for each day in the billing period and adding together all of those daily Finance Charge amounts. There is a minimum **FINANCE CHARGE** of **$1.00** for a billing period in which a Finance Charge is assessed.

---

[1] Exhibit 1, credit card statements.

**B.** The Periodic Rate for your Account is .06025% **(ANNUAL PERCENTAGE RATE 21.99%).**

**5. BALANCE SUBJECT TO FINANCE CHARGE.**
The balance subject to Finance Charge is the Daily Balance of the Account. To determine the balance subject to Finance Charge, we take the beginning balance of your Account each day, which includes any unpaid Finance Charges and add any new Purchases and other debits for that day and subtract any payments and other credits applied that day. Each day we also add any Finance Charges, Late Payment Fees, and Returned Check Fees assessed that day. Debt cancellation fees and credit insurance premiums, if any, are not included. This gives us the "Daily Balance" of the Account. Any Daily Balance of less than zero will be treated as zero.

**6. WHEN FINANCE CHARGES BEGIN TO ACCRUE.** Purchases and other charges begin to accrue a periodic Finance Charge from the later of the date of the transaction or the first day of the billing period in which the transaction is posted to your Account. However, Finance Charges will not be imposed on new Purchases appearing on a billing statement if you pay the New Balance appearing on that billing statement (other than unexpired promotional and Special Payment Plan balances) in full by the Payment Due Date.

**18. WAIVER.** We may, in our sole discretion, choose to not exercise any right under this Agreement, including the right to impose the full amount of any charge, without waiving that right. Any waiver of a right by us must be in writing and signed by us. Except as we may agree in a signed writing, we will not waive any rights if we (a) accept a late or partial payment, (b) accept a check or other payment marked "payment in full" or tendered with other conditions or limitations, (c) extend the due date of any payment due under this Agreement, and/or (d) release any collateral or person responsible for your obligations under this Agreement.

**21. GOVERNING LAW. This Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law). The legality, enforceability and interpretation of this agreement and the amounts contracted for, charged and received under this Agreement is governed by such laws. This Agreement is entered into between you and us in Utah. We make decisions about granting credit to you from, extend credit to you under this agreement from, and accept your payments in Utah.** 2

## B.     PRA Acquires Ms. Stratton's Credit Card Account from GE.

On or about January 15, 2010, PRA purchased from GE a large portfolio of charged-off credit card accounts, which included Ms. Stratton's Account. As part of the sale, GE sent to PRA electronic data regarding Ms. Stratton's Account. The "Load Data" from GE includes the date Ms. Stratton's Account was opened, the date of first delinquency, the charge-off date, the principal balance at charge-off and sale of the Account to PRA, Ms. Stratton's name and address, the Account number, and the contract interest rate which GE charged Ms. Stratton's Account at the time of charge-off in the amount of 21.99%. The Load Data also shows that GE transferred to PRA the right to charge Ms. Stratton's Account contract interest at the rate of 21.99%.[3]

---

[2] Exhibit 2, Credit Card Agreement; Exhibit 6, PRA's Response to Interrogatory No. 2.
[3] Exhibit 3, redacted copy of the Load Data; *see also* Exhibit 6, PRA's Responses to Ms. Stratton's Discovery Requests, Response to Interrogatory No. 2 ("Load Data sheet from GE (Bates Stamped

**C.**      **PRA Files Suit in Kentucky State District Court to Collect the Account.**

On June 20, 2012, PRA filed a Collection Lawsuit in Kentucky's Scott County District Court to collect on the Account.[4] PRA's Collection Lawsuit sought to recover the charged-off amount of $2,630.95, and also requested that the state court award PRA prejudgment interest in the amount of 8% from the date of charge-off. PRA did <u>not</u> specifically seek statutory prejudgment interest, or seek prejudgment interest at the contract rate of 21.99% per year. Rather, PRA's collection complaint stated in its entirety:

**COMPLAINT**

*** *** *** *** ***

Comes the Plaintiff, the Creditor herein, by Counsel, and for its complaint, states as follows:

1.      That the account of DEDE STRATTON , bearing the account number ending in 0265, is in default.

2.      Said account is due and payable to Portfolio Recovery Associates, LLC, having acquired the account through sale, assignment or other legal means.

3.      The original creditor is GE MONEY BANK, F.S.B..

4.      Said obligation is past due, and the Defendant(s) owes Plaintiff  $2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008  until date of judgment with 12% per annum thereafter until paid,  plus court costs.

WHEREFORE, Plaintiff demands judgment against the Defendant(s) for the sums plus interest set forth above and court costs.

[5]

Attached to PRA's State Court Complaint were two documents supporting PRA's claims. First, PRA attached an affidavit from Dwayne Davis dated April 5, 2012, which indicated the <u>principal</u> balance due and owing on the Account. Notably, the Affidavit did not reference prejudgment interest at all:

---

PRA/Stratton 000017), showing the Stratton Account was delivered from GE to PRA with an existing contract interest rate of 21.99 %....").
[4]  *See* Amended Complaint, [D.E. 10 at ¶¶ 1, 7-18]; Ex. A [D.E. 10-1]; Ex. C [D.E. 10-3].
[5]  [D.E. 10-1].

4.   According to the records transferred to [PRA] from [GE], and maintained in the ordinary course of business by [PRA], there was due and payable from DEDE STRATTON ("Debtor and Co- Debtor") to [GE] the sum of $2,630.95 with the respect to account number ending in 0265 as of the date of 12/19/2008 with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

5.   According to the account records of [PRA], after all known payments, counterclaims, and/or setoffs occurring subsequent to the date of sale, [PRA] claims the sum of $2,630.95 as due and owing as of the date of this affidavit.[6]

PRA's collection complaint also included a copy of the Load Data which indicated that GE transferred to PRA the right to charge up to 21.99% interest.[7]

**D.   Ms. Stratton's FDCPA Complaint Against PRA.**

On July 24, 2013, Ms. Stratton filed her First Amended Complaint in this Court. The Amended Complaint conclusorily alleges that GE "waived" the right to charge any interest on Ms. Stratton's Account only because GE "did not charge or impose any interest on Ms. Stratton's . . . account during the thirteen-month period between charging off the account on December 19, 2008 and the sale or assignment of the account to PRA on January 15, 2010."[8] The Amended Complaint then alleges that by seeking 8% prejudgment interest in the Collection Lawsuit, PRA ostensibly violated three specific provisions of the FDCPA:

-   15 U.S.C. § 1692e(2)(A), which prohibits PRA from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt [including] . . . The false representation of— (A) the character, amount, or legal status of any debt;"

-   15 U.S.C. § 1692e(5), which prohibits PRA from making a "threat to take any action that cannot legally be taken or that is not intended to be taken;" and

---

[6] [D.E. 10-2].
[7] *See* <u>Exhibit 6</u>, PRA's Responses to Ms. Stratton's discovery.
[8] Amended Complaint, [D.E. 10 at ¶¶ 19-20].

-   15 U.S.C. § 1692f(1), which prohibits PRA from using "unfair or unconscionable means to collect or attempt to collect any debt, [including] . . . (1) The collection of any amount (including any interest, fee, charge, or expense . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.[9]

**E.     PRA's Motion to Dismiss, Appeal and Remand**

PRA filed a motion to dismiss the Amended Complaint, and on November 26, 2013, this Court granted PRA's Motion. [D.E. 10, 16]. Nearly one year later, a divided panel of the Sixth Circuit Court of Appeals reversed the trial court.[10] Notably, the Sixth Circuit <u>assumed</u> for purposes of its Opinion that GE had waived the right to seek contract interest. *Stratton*, 770 F.3d at 447. The Sixth Circuit then held that under Kentucky law, if the original creditor had a contractual right to charge interest, but then waived the right to charge contract interest, neither the original creditor (GE) nor its assignee (PRA), could seek any interest due to the specific language of KRS 360.010.[11]

The case was then remanded, PRA filed its Answer to Ms. Stratton's First Amended Complaint,[12] and for the last ten (10) months the parties have been engaged in discovery.

**F.     Discovery**

PRA submitted discovery to Ms. Stratton on the issue of whether she could prove that GE waived the right to charge contractual interest. In response, Ms. Stratton stated that her only evidence of waiver was that the principal amount of Ms. Stratton's Account balance was the same amount at charge-off as on the date the Account was sold to PRA. Specifically, Ms. Stratton stated:

---

[9] *Id.* at ¶ 52.
[10] *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 (6th Cir. Ky. 2014).
[11] *Id.* at 448.
[12] [D.E. 22, 27].

3.     State all facts and information in your possession that support your assertion that GE Money Bank waived the right to charge interest on the Account after the Account was charged-off.

**ANSWER:**

PRA's own documents affirmatively show that GE did not accrue any interest on the Account after charging off the Account. In particular, Plaintiff notes that the affidavit of Dwayne E. Davis, as record custodian of PRA averred in pertinent part:

4.     According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from **DEDE STRATTON** ("Debtor and Co-Debtor") to the Account Seller the sum of **$2,630.95** with the respect to account number **ending in 0265** as of the date of **12/19/2008** with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

And PRA furnished in discovery a document identified as

Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE MONEY BANK, F.S.B. pursuant to the sale of accounts from GE MONEY BANK, F.S.B. to Portfolio Recovery Associates, LLC on 1/15/2010

This document states that the Original Creditor charged off the debt on December 19, 2008 and that the current balance on the debt as of January 15, 2010 was $2,630.[13]

Ms. Stratton also referenced unknown GE documents which, as of the close of discovery, she had yet to receive from GE, in part because she did not serve her subpoena on GE until the day before the discovery cut-off date with a compliance date of October 1, 2015.[14]

Thus, as of the discovery cut-off date and the date dispositive motions are due, Ms. Stratton has provided no information regarding GE's alleged intent to relinquish its right to charge interest on Ms. Stratton's Account, and Ms. Stratton did not reference any written documents from GE indicating a waiver. Rather, Ms. Stratton merely infers an implied waiver based on GE's conduct.[15] As set forth below, Ms. Stratton's evidence of waiver is insufficient, and PRA is entitled to summary final judgment on all of her claims as a matter of law.

---

[13] Exhibit 4, Ms. Stratton's Discovery Responses, No. 3.

[14] Exhibit 8, Stratton August 26, 2015 Subpoena to GE, indicating a response date of October 1, 2015; *See also* Court's Order Denying Ms. Stratton's Motion to Compel Discovery from Synchrony [D.E. 53].

[15] *See* Exhibit 4, Ms. Stratton's Response to Defendant's Interrogatory No. 3.

### III.   ARGUMENT

**A.    PRA's Right to Request Prejudgment Interest is Governed by Utah law; Therefore, KRS 360.010(1) is Inapplicable to this Court's Decision.**

While the Sixth Circuit held that KRS 360.010 prevents PRA from seeking prejudgment interest, discovery has revealed that KRS 360.010 is not even applicable to this action. Rather, the Credit Card Agreement produced in discovery establishes that Utah law governs both Ms. Stratton's Account and PRA's entitlement to prejudgment interest.

**1.    Entitlement to Prejudgment Interest is a Substantive Question; Therefore, Utah Code Ann. § 15-1-1 Applies, not KRS 360.010.**

Under the choice of law provision in GE's Credit Card Agreement, PRA's right to collect prejudgment interest is governed by Utah law. It is well settled in Kentucky that a contractual choice of law provision is enforceable. *See Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 963 (W.D. Ky. 2007) ("The Sixth Circuit recognizes that Kentucky will enforce contractual choice of law provisions unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice." (internal quotation marks omitted)). When a contract contains a choice of law provision, the selected state's law applies to "substantive" issues, while the forum's state's laws apply to "procedural" issues. *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) ("While parties are generally free to contract choice of law, such provisions in contracts are generally understood to incorporate only substantive law, not procedural law. . . .").

Under Kentucky law, because the purpose of PRA's request for prejudgment interest in the Collection Lawsuit was compensating PRA for the use of "funds that were rightly due earlier," PRA's request for interest is substantive. *Felix v. Lyons*, No. 2009-CA-312-MR, 2010 Ky. App. Unpub. LEXIS 1019, at *14 (Ky. Ct. App. Oct. 22, 2010); *see also Miller Truck Lines,*

11

*LLC v. Cent. Refrigerated Serv., Inc.*, 781 F. Supp. 2d 488, 497 (W.D. Ky. 2011) ("[B]ecause the Kentucky Supreme Court would treat prejudgment interest as substantive, so must this court."). "[The Kentucky] Supreme Court said that in a breach of contract claim, prejudgment interest is due as damages, thereby indicating our judiciary's view that prejudgment interest is substantive." *Lyons*, 2010 Ky. App. Unpub. LEXIS 1019, at *15. Accordingly, in this case, where PRA sought prejudgment interest as damages on a claim of account stated, prejudgment interest is a substantive right.

As set forth above, the Credit Card Agreement governing Ms. Stratton's Account provided that Utah law applied.[16] Therefore, Utah law applies to all substantive issues governing Ms. Stratton's Account, which includes the issue of whether PRA is entitled to prejudgment interest. *See JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 583 (6th Cir. 2014) ("Prejudgment interest is a substantive aspect of damages."); *Jack Henry & Assocs. v. BSC, Inc.*, 487 F. App'x 246, 257 (6th Cir. 2012) (declaring that prejudgment interest is a substantive issue); *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 922 (6th Cir. 2000) ("Prejudgment interest is a substantive element of damage."); *Diggs v. Pepsi-Cola Metro. Bottling Co.*, 861 F.2d 914, 924 (6th Cir. 1988) ("[T]he determination of prejudgment interest . . . [is] a matter of substantive state law."); *Miller Truck Lines*, 781 F. Supp. 2d at 497 (finding that the Kentucky Supreme Court would treat prejudgment interest as a substantive issue).

Accordingly, the issue of whether PRA may seek prejudgment interest in its state court complaint is dependent only on an analysis of Utah Code Ann. § 15-1-1, not KRS 360.010. As set forth below, under Utah law, even if GE waived the right to contract interest, which it did not, PRA was still entitled to seek prejudgment interest in an amount up to Utah's statutory interest rate of 10%.

---

[16] *Supra*, p. 6; Exhibit 2, at § 21.

##### 2. Utah Law Does Not Prohibit a Request for Prejudgment Interest at the Legal Rate, Even if a Different Rate is Agreed Upon by Contract.

Utah Code Ann. § 15-1-1 does <u>not</u> include the same language of KRS 360.010 which the Sixth Circuit relied upon to conclude that the waiver of the right to contract interest precludes a request for interest at the lesser statutory rate. Therefore, Utah Code Ann. § 15-1-1 did not bar PRA from seeking prejudgment interest on Ms. Stratton's past due Account.

The Sixth Circuit's *Stratton* Opinion hinged on the unique language of KRS 360.010(1) that is not included in Utah Code Ann. § 15-1-1. Specifically, the Sixth Circuit held that "[KRS 360.010] states that any assignee '*shall be bound* for such rate of interest as is expressed in any such . . . contract . . .  and no law of this state prescribing . . . interest rates shall apply to any such agreement or to any charges which pertain thereto."[17]

Alternatively, Utah Code Ann. § 15-1-1 does not include the similar "*shall be bound*" language the Sixth Circuit relied upon, but instead provides in full:

(1)     The parties to a lawful contract may agree upon any rate of interest for the loan or forbearance of any money, goods, or chose in action that is the subject of their contract.

(2)     Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum.

(3)     Nothing in this section may be construed in any way to affect any penalty or interest charge that by law applies to delinquent or other taxes or to any contract or obligations made before May 14, 1981.

---

[17] *Stratton*, 770 F.3d at 447 (quoting KRS 360.010) (emphasis in original); *see also id*. at 448 ("GE and any party 'who may assume or guarantee any such contract or obligation[] shall be bound by such rate of interest;' GE's choices are binding and 'no law of this state prescribing or limiting interest rates shall apply' to relieve it of the consequences of those choices." (quoting KRS 360.010(1)).

Thus, Utah's usury statute does not contain Kentucky's (ostensibly)[18] mandatory bar to recovery that the Sixth Circuit held prevented PRA from requesting prejudgment interest under KRS 360.010.

Importantly, the Sixth Circuit distinguished its interpretation of KRS 360.010 from two other federal cases which interpreted state usury statutes that lacked Kentucky's unique "shall be bound" language, and where the federal courts held that an assignee can request prejudgment interest, even if the assignor had waived its right to contract interest:

> The [*Stratton*] dissent relies upon decisions interpreting the prejudgment interest statutes of other states. But the usury statutes of those states do not contain Kentucky's mandatory language that bars the imposition of statutory interest after a contractual rate of interest has taken effect. For example, Missouri's statute provides:
>
>> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made. . .
>
> As a result, courts construing such statutes may determine that the particular state regime does not treat creditors so strictly after they waive a contractual rate of interest. Such differences among statutes reinforce the need to read Kentucky's statute carefully and apply its particular language.[19]

In fact, at least three other courts have construed usury statutes similar to Utah's, and each court concluded that an original creditor's waiver of the right to contractual interest does not prevent an assignee from seeking prejudgment interest at the statutory rate. For example, in *Peters v. Financial Recovery Services, Inc.*, the Western District of Missouri interpreted the

---

[18] As the Court may be aware, in a nearly identical case involving the same counsel, but different parties, the Kentucky Supreme Court recently granted discretionary review to address the Kentucky Court of Appeals Opinion which adopted the Sixth Circuit's reasoning in *Stratton*. *See Harrell v. Unifund CCR Partners*, 2015 Ky. App. LEXIS 13 (Ky. Ct. App. Feb. 6, 2015). Exhibit 9, Order Granting Discretionary Review.

[19] *Stratton*, 770 F.3d at 448 n.1.

Missouri usury statute set forth in the Sixth Circuit's *Stratton* opinion, and held that "even if the right to charge interest at the contractual rate was waived by GE's failure to continue to send post charge-off billing statements, ***statutory interest could still be charged***." 46 F. Supp. 3d 915, 918 (W.D. Mo. 2014). Additionally, in *Grochowksi v. Daniel N. Gordon, P.C.*, No. C13-343, 2014 U.S. Dist. LEXIS 54258 (W.D. Wash. Apr. 17, 2014), the Western District of Washington interpreted Washington's usury statute, which provides: "Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties. . . ." Wash. Rev. Code § 19.52.010(1). The *Grochowksi* court determined that "Capital One's decision to forego the contractual rate of interest ***did not relinquish its right to seek prejudgment interest at the statutory rate***." *Grochowski*, 2014 U.S. Dist. LEXIS 54248, at *10 n.2; s*ee also Bunce v. Portfolio Recovery Assocs., LLC*, No. 14-2149, 2014 U.S. Dist. LEXIS 159679, at *10 (D. Kan. Nov. 12, 2014) (holding that under Kansas law, a collector may seek statutory prejudgment interest even if the original creditor waived the right to contract interest, noting that both "the Kansas and Missouri statues lack the mandatory 'shall be bound' language which was a key element of the Sixth Circuit's decision in *Stratton*").

The Utah usury statute, Utah Code Ann. § 15-1-1, contains essentially the same language as the Missouri, Kansas and Washington usury statutes. *Compare*

Utah Code Ann. § 15-1-1(2) - "Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest . . . shall be 10% per annum."; *with*

Kansas Stat. Ann. 16-201 - "Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due."; *and*

<u>Wash. Rev. Code § 19.52.010(1)</u> - "Every loan . . . shall bear interest at the rate of twelve percent annum where no different rate is agreed to in writing between the parties.", *and*

<u>Mo. Rev. Stat. § 408.020</u> - "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon . . . ."

Therefore, the decision of whether PRA was entitled to prejudgment interest, even if GE waived contractual interest (which GE did not), should be governed by Utah law and should be guided by *Peters*, *Bunce*, and *Grochowski*, not the Sixth Circuit's interpretation of KRS 360.010. Accordingly, under applicable Utah law, even if GE waived the right to prejudgment interest at the contract rate of 21.99%, PRA was still entitled to seek prejudgment interest in the Collection Lawsuit up to Utah's rate of 10% per year. Therefore, PRA's request for only 8% interest did not violate the FDCPA,[20] this Court need not conduct any further analysis, and PRA is entitled to summary final judgment as a matter of law.

**B.      Ms. Stratton Cannot Prove that GE Waived Contract Interest.**

Even if the Court does not apply Utah law, Ms. Stratton has failed to satisfy her burden to establish that GE waived its right to collect contract interest.

### 1.      Ms. Stratton Bears the Burden of Proving Waiver.

Before Ms. Stratton's claims can succeed, she must prove that GE made an intentional, voluntary, and knowing act to waive its right to collect contract interest. "[W]aiver requires proof of a 'knowing and voluntary surrender or relinquishment of a known right.'" *Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995) (citations omitted). Because Ms. Stratton is the party relying upon waiver, she bears the burden of proof. *See Pangallo v. Ky. Law Enforcement Council*, 106 S.W.3d 474, 479 (Ky. Ct. App. 2003) ("The burden of proof is upon the person relying upon waiver."); *see also N. River Ins. Co. v. Rawls*, 214 S.W. 925, 925 (Ky. 1919) ("No

---

[20] *See infra*, p. 20 (PRA did not violate the FDCPA by seeking in its Collection Lawsuit less interest than it was entitled to receive).

rule is better settled that the burden of proof lies on the party that would be defeated if no evidence were given on either side.").

Here, Ms. Stratton has insufficient evidence to establish that GE waived its right to collect contract interest. Accordingly, this Court must grant PRA summary judgment on all of her claims. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 n.3 (6th Cir. 2003) (stating that whether the facts amount to waiver is a legal question for the court).

### 2. Ms. Stratton Can Only Satisfy Her Burden Of Proof By Providing a Signed Writing in which GE Expressly Waived its Right to Charge Ms. Stratton Interest.

The non-waiver clause in GE's Credit Card Agreement means that Ms. Stratton can only satisfy her burden of proof that GE waived its right to contract interest by producing a writing signed by GE. That is, the non-waiver clause in the Credit Card Agreement means that any evidence of an implied waiver is insufficient as a matter of law. Because Ms. Stratton has no such writing signed by GE, she cannot satisfy her burden of proof, and PRA is entitled to summary final judgment on all of Ms. Stratton's claims as a matter of law.

The GE Credit Card Agreement applicable to the Account contained a non-waiver clause which provided:

> We may, in our sole discretion, ***choose not to exercise any right under this Agreement***, including the right to impose the full amount of any charge, ***without waiving that right***. Any ***waiver*** of a right ***by us must be in writing and signed by us.***[21]

It is well accepted that non-waiver clauses are valid and enforceable in Kentucky. For example, in *KFC Corp. v. Kazi*, No. 3:11-CV-00475, 2012 U.S. Dist. LEXIS 180424 (W.D. Ky. Dec. 20, 2012), the Western District noted that "[u]nder Kentucky law, waiver is "a voluntary and intentional surrender . . . of a known right." *Id.* at *9 (citations omitted). The court went on to hold that "[n]on-waiver clauses are routinely upheld as enforceable." *Id.* (citing *Universal C. I.*

---

[21] Exhibit 2, at § 18 (emphasis supplied).

*T. Credit Corp. v. Middlesboro Motor Sales, Inc.*, 424 S.W.2d 409, 411 (Ky. 1968) (upholding a non-waiver clause); *Home Fin. Co. v. Frazier*, 380 S.W.2d 91, 93 (Ky. 1964) (upholding a contract's non-waiver clause and finding that acceptance of delayed payments did not constitute waiver)).

Thus, the *Kazi* court held that the non-waiver clause in the settlement agreement precluded a finding of an implied waiver and, in the absence of an express waiver, found the defendant's waiver argument unavailing. *Id.* at *9 ("Under this [non-waiver] clause, the absence of an express waiver . . . precludes a finding of an implied waiver.").

Here, by written agreement, GE explicitly reserved the right to not post interest to Ms. Stratton's Account without forever waiving its right to charge interest at the contractual rate, unless GE expressly stated it waived the right to charge contract interest in a signed writing.[22] Ms. Stratton has not produced such a signed writing. Therefore, she has <u>no</u> evidence of GE's alleged express waiver. And, due to the non-waiver clause, her mere inference of an implied waiver through GE's conduct is insufficient as a matter of law. *See id.*

### 3. Ms. Stratton Has Not Put Forth Sufficient Evidence Showing that GE Impliedly Waived its Right to Collect Contract Interest.

Even assuming Ms. Stratton could satisfy her burden of proof by establishing GE impliedly waived its right to contract interest (which she cannot because the non-waiver clause requires an express waiver), Ms. Stratton's "evidence" of an implied waiver is also insufficient as a matter of law.

There is no waiver in Kentucky absent "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon*." Barker v. Stearns Coal & Lumber Co.*, 163

---

[22] *See Stratton*, 770 F.3d at 448 ("It may be that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest.").

S.W.2d 466, 470 (Ky. 1942); *Weis Builders, Inc. v. Complete Contr., Inc.*, 247 S.W.3d 542, 545

(Ky. Ct. App. 2008); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. App.

2001). It is well settled in Kentucky that "waiver will not be inferred lightly." *Conseco*, 47

S.W.3d at 344.

Ms. Stratton's only alleged evidence that GE waived its right to collect contract interest is

that GE charged-off the Account, and that GE did not post additional interest to the Account

balance after charge-off.[23] However, for four separate reasons, this is not evidence that GE

impliedly waived its right to collect contract interest. *See Baptist Physician Hosp. Org. Inc. v.*

*Humana Military Healthcare Servs.*, 481 F.3d 337, 352 (6th Cir. 2007) ("To prove waiver by

course of conduct, there must be clear, unequivocal, and decisive acts of the party or an act

which shows determination not to have the benefit intended in order to constitute a waiver.").

First, PRA's expert witness, Ms. Jane Cloninger, has explained the custom and practice

of the credit card industry as it relates to post-charge-off interest. Ms. Cloninger explained that at

the time Ms. Stratton's Account was charged-off, financial institutions in the credit card industry

did not waive their right to contract interest. Rather, Ms. Cloninger explained that in the credit

card industry, not posting interest to an account deemed uncollectible did not mean the creditor

intentionally waived the right to charge that interest if the account ever was collected.[24] Ms.

Cloninger also stated that when GE sold the Account to PRA:

> The common post-charge off practice of credit issuing banks, such as GE Money Bank,
> is to not implicitly or explicitly waive the banks' right to collect from their borrowers . .
> . interest at the rate allowed by contract. Rather, credit issuing banks retain the right to
> charge interest after charge-off in order to retain the right to collect interest directly from
> the borrower after charge-off or to maximize the value of the account for re-sale on the
> distressed receivables market. Banks that do not post interest to an account balance after
> charge off do not intend that their right to ever again charge the contract rate of interest

---

[23] *See* Exhibit 4, Ms. Stratton's Response to Defendant's Interrogatory No. 3.
[24] Exhibit 5, Expert Affidavit and Expert Report, § 4 at 18 - 19.

is lost. For this reason, banks' credit card agreements typically have a 'no waiver' clause. . . .[25]

When viewed in conjunction with all of the regulations and obligations upon a financial institution it becomes clear why the Credit Card Agreement contains a non-waiver provision that a financial institution would rely upon when it deems an account "uncollectible." As Ms. Cloninger stated, banks have an obligation to regulators to accurately report their expected income. But, banks cannot continue inflating their assets by adding interest to accounts they have no expectation of ever collecting. Thus, banks must retain the right to charge interest after charge-off so that they may fulfill their obligations to shareholders to maximize the value of all of their distressed assets.[26]

Second, the mere fact that Ms. Stratton's Account balance did not change from when GE charged-off the Account to when PRA purchased it, is not proof that GE intentionally relinquished the right to charge contract interest. Rather, it is nothing but Ms. Stratton's mere supposition about GE's intent and should not carry the day. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 542 (N.D. Ill. 2012) (stating that plaintiff's allegations that the face value of the loan was the same on the date of charge off as on the date of sale "may not be sufficient to carry the day at trial, as they say nothing about the prior holders' actual policies"). In fact, without knowing GE's actual policies and accounting practices, there is no way to know whether GE was still accruing, but not posting interest to Ms. Stratton's Account, or whether GE was not even accruing, but not waiving its right to charge contractual interest from the date of charge-off. Thus, even if GE stopped posting interest to Ms. Stratton's Account, that fact is not evidence that GE waived its right to ever collect contractual interest, especially because, among

---

[25] Exhibit 5, Expert Affidavit and Expert Report, § 4 at 18 - 19.
[26] *See* Exhibit 5, Expert Affidavit and Expert Report, § 4 at 19; ("[B]anks have two different obligations to its shareholders and regulators; the first one is to maintain accurate accounting and reporting practices and the second one is to maximize the value of its debt portfolio.").

other reasons, the Credit Card Agreement gave GE the explicit right to cease charging or posting interest without waiving its right to do so.

Third, because Federal regulations required GE to charge-off Ms. Stratton's Account after it became 180 days delinquent,[27] merely charging off Ms. Stratton's Account is not evidence that GE intentionally waived its right to contractual interest, because charge-off was <u>not a voluntary act</u>. Rather, "[c]harging off the delinquent accounts is a federal regulatory requirement. Accordingly, it is not a voluntary action of the creditor." *Bunce*, 2014 U.S. Dist. LEXIS 159679, at *4. Thus, because GE was required under federal regulations to charge-off Ms. Stratton's Account, the mere act of charge-off cannot serve as the basis for finding a waiver because the charge-off was not a voluntary act. *See Greathouse*, 891 S.W.2d at 391 ("waiver requires proof of a 'knowing and voluntary surrender or relinquishment of a known right'").

Finally, GE's mere act of charging-off Ms. Stratton's Account does not amount to the waiver of GE's right to charge interest. Again, Ms. Cloninger clearly stated that Federal banking regulators allow the charging of interest, post-charge-off. But, if post-charge-off interest is collected, the bank must report the amount collected as ordinary income.[28] Thus, because Federal regulators allow post-charge-off interest to be collected, merely charging off an account is not evidence of an implied waiver of the right to collect post-charge-off interest.

Discovery has closed and Ms. Stratton has produced no evidence from which this Court may determine that GE knowingly, voluntarily, and intentionally waived its right to collect

---

[27] "In general, the [Uniform Retail Credit Classification and Account Management Policy: Established a charge-off policy for open-end credit at 180 days delinquency. . . ." Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903, 36903 (June 12, 2000); *see also* <u>Exhibit 5</u>, Expert Affidavit and Report, at § 2, p. 14 ("Banks are required to charge-off accounts once the account becomes 180 days delinquent, as established in the 1999 Uniform Credit Classification and summarized in the FFIEC . . . policy notice dated June 2000.").

[28] <u>Exhibit 5</u>, Expert Affidavit and Report, at § 3, p. 18 (the Office of the Comptroller of the Currency "recognized that charging interest post-charge off was allowed as a matter of law, and that the collection of such post-charge-off interest by the original issuer must be allocated as income.).

contractual interest. Accordingly, Ms. Stratton cannot meet her burden of proof to establish a waiver, this Court need not conduct any further analysis, and PRA is entitled to summary final judgment on all of Ms. Stratton's claims as a matter of law.

**C.      PRA Did <u>Not</u> Violate the FDCPA By Seeking <u>Less</u> Than the Contractual Interest Rate.**

It is important to note that even though PRA could have sought 21.99% contract interest because GE did not waive that right, or 10% interest even if there was a waiver because Utah law applied, PRA did not violate the FDCPA by seeking only 8% interest. That is, PRA did not violate the FDCPA by suing for <u>less</u> than the amount it was owed. For example, in *Lane v. Daniel N. Gordon, P.C.*, No. 10-CV-793, 2011 U.S. Dist. LEXIS 11508, at *3 (D. Or. Feb. 7, 2011), the creditor requested that the consumer pay all of the prejudgment interest due and owing in a pre-suit demand letter, and then filed a state court collection complaint seeking a lesser amount. Upon the consumer's complaint for an alleged FDCPA violation, the federal court awarded the creditor summary judgment finding that the creditor "simply sought less in the complaint than the full amount due and owing; since the amounts stated in the . . . demand letter and in the . . . complaint were both correct, defendant did not make a false statement." *Id.; see also Gates v. Asset Acceptance, LLC*, 801 F. Supp. 2d 1044, 1048 (S.D. Cal. 2011) ("Although the state court complaint sought an incorrect rate of interest, it sought less interest than the amount owed. Such a misstatement is not material [and therefore not an FDCPA violation]."); *Webb v. Midland Credit Mgmt.*, No. 11-C-5111, 2013 U.S. Dist. LEXIS 43599, at *1-12 (N.D. Ill. Mar. 27, 2013) (seeking less than amount due does not violate FDCPA).

The clear purpose of the FDCPA is to avoid deceitful, false and fraudulent means to collect a debt. The mere fact that PRA requested less interest than it was entitled to recover, does

not make PRA's Collection Lawsuit incorrect, or a false, deceptive, misleading, unfair, or unconscionable means of collecting a debt. Accordingly, PRA is entitled to summary judgment.

**D.    Even if Kentucky Law Applies and GE Waived the Right to Interest, This Court May Still Conclude PRA Did Not Violate the FDCPA.**

If this Court determines that Kentucky law applies and that Ms. Stratton has somehow proved GE waived its right to contract interest, PRA expects Ms. Stratton to argue that the Sixth Circuit's opinion on whether PRA violated the FDCPA constitutes the "law of the case" which is binding upon this Court.  Ms. Stratton is wrong.

In this case, the only portion of the Sixth Circuit's *Stratton* Opinion which is binding on this Court is the Sixth Circuit's interpretation of KRS 360.010.[29] Because *Stratton* was an appeal of this Court's Order granting PRA's motion to dismiss, however, the Sixth Circuit's only task was to determine whether Ms. Stratton's Amended Complaint stated a "plausible"[30] claim for an FDCPA violation, <u>not</u> whether PRA actually violated the FDCPA. Indeed, because the standards of review under a motion to dismiss and a motion for summary judgment are so different, a decision on a motion to dismiss cannot establish the law of the case. *See Thompson v. Transam Trucking, Inc.*, No. 2:08-CV-927, 2011 U.S. Dist. LEXIS 61176, at *15-16 (S.D. Ohio June 8, 2011) ("A decision on a motion to dismiss, however, does not establish the law of the case for purposes of summary judgment." (citations omitted)); *Wilkins v. Jakeway*, 44 F. App'x 724, 728

---

[29] If the Kentucky Supreme Court reverses *Harrell* and determines that KRS 360.010 does not preclude an assignee from seeking prejudgment interest when the original creditor waives contract interest, then no portion of the Sixth Circuit's *Stratton* opinion will be binding on this Court. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) ("A federal court must follow the decisions of the state's highest court when that court has addressed the relevant issue."); *Johnson v. Fankell*, 520 U.S. 911, 917 (1997)("[I]nterpretation of the Idaho statute by the Idaho Supreme Court would be binding on federal courts. Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the state. This proposition, fundamental to our system of federalism, is applicable to procedural as well as substantive rules.").

[30] *Stratton*, 770 F.3d at 451.

(6th Cir. 2002) (stating that whether a complaint states a claim and whether there is a material fact for purposes of summary judgment presents "two separate issues" that do not establish the law of the case); *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) ("Because no dispute about the basic elements of Kentucky law on mutual mistake was expressly before the court in the earlier appeal, any peripheral misstatements of that law can only be viewed as dicta."); *Society of the Roman Catholic Church v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 735-36 (5th Cir. 1997) ("[T]he law of the case does not apply where the first appellate ruling transpired before the parties had the opportunity to present all their evidence to the district court.").

Thus, the Sixth Circuit's statements that Ms. Stratton's FDCPA claims were "plausible,"[31] are mere dicta and are not binding on this Court. *See Holloway v. Bush*, 220 F.3d 767, 778 (6th Cir. 2000) ("Had that court opined on . . . an issue that was not before it, the result would have been not the law of the case, but, at best, dicta."). Accordingly, if Kentucky law applies and if this Court determines that Ms. Stratton has proved waiver, this Court must now determine if Ms. Stratton has presented evidence that an FDCPA violation actually occurred, and no portion of the Sixth Circuit opinion will control this Court's decision on that issue.

**E.      Even if GE Waived Contractual Interest, PRA Did Not Violate § 1692f(1).**

Even if GE waived its right to contractual interest, PRA did not violate section 1692f(1) because that section does not apply to the facts of this case. Section 1692f(1) provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt [including the] collection of any amount (including any interest...) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

---

[31] *Stratton*, 770 F.3d at 451.

Courts interpreting 1692f(1) hold that if a debt collector seeks an amount which was "expressly authorized by the agreement," it does not violate section 1692f(1). Here, GE's Credit Card Agreement provided that GE was entitled to 21.99% interest. Thus, PRA's request for prejudgment interest at 8% was "expressly authorized by the agreement," and PRA therefore did not violate section 1692f(1).

The Northern District of Illinois was recently faced with the exact same question of whether the defendant violated § 1692f(1) by attempting to collect interest that the original creditor had allegedly waived, and granted summary judgment in favor of the debt collector. In *Simkus v. Calvary Portfolio Services, LLC*, 12 F. Supp. 3d 1103, 1110 (N.D. Ill. 2014), the court explained that seeking such interest was not a § 1692f(1) violation because that section is only "'directed at debt collectors who charge fees not contemplated by the original agreement, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter.'" *Id.* at 1110 (quoting *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 544 (N.D. Ill. 2012)). Thus, the *Simkus* court found that "even if [the original creditor] waived its right to collect interest, Defendants cannot have violated 1692f(1) if the original agreement between Mr. Simkus and BOA allowed for charging interest on late payments." *Id.*; *see also Stubbs v. Cavalry SPV I, LLC*, No. 12-CV-7235, 2015 U.S. Dist. LEXIS 2230, at *7-8 (N.D. Ill. Jan. 8, 2015) (in addressing whether the debt collector improperly sought prejudgment interest after the original creditor allegedly had waived its right to charge interest, the court awarded the debt collector summary judgment on the consumer's § 1692f(1) claim holding that "[d]efendants cannot have violated § 1692f(1) as interest was clearly contemplated in the agreement between Plaintiff and BOA.").

This case is identical to *Simkus* and *Stubbs.* The original agreement between GE and Ms. Stratton indisputably provided the right to charge interest on any unpaid balances. Ms. Stratton has admitted that "any underlying credit card agreement that applied to the Account included terms and conditions that gave the Original Creditor the right to charge interest on the Account."[32] Accordingly, because the Credit Card Agreement allowed GE to charge interest, PRA did not commit a section 1692f(1) violation by requesting prejudgment interest, even if GE waived the right to charge interest.

**F.    PRA's Request for Prejudgment Interest in the Collection Lawsuit Does not Violate Sections 1692e or 1692f of the FDCPA**

Even if GE waived its right to collect contractual interest and even if Utah law does not apply, PRA still did not violate 15 U.S.C. § 1692e(2)(A) (false representation of the character, amount, or legal status of any debt), 1692e(5) (threat to take any action that cannot legally be taken or that is not intended to be taken) or 1692f(1) (unfair or unconscionable means), because PRA's use of the judicial process and assertion in the Collection Lawsuit that it was entitled to prejudgment interest is not an "unfair or unconscionable means" to collect a debt, or a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Rather, PRA's Collection Lawsuit merely presented PRA's legal and factual position that it is entitled to prejudgment interest. As the U.S. Supreme Court held, an FDCPA violation does not occur merely because a court determines the collectors' claims are not supported.

For example, in June of this year, the Eleventh Circuit Court of Appeals held that while the FDCPA does impose "some constraints on a lawyer's advocacy on behalf of [his] client" such that the litigation activity of a collector can give rise to an FDCPA violation, a collector's assertion of a legitimate (even if ultimately wrong) legal position is conduct inherent to the

---

[32] Exhibit 4, Ms. Stratton's Response to Defendant's Request for Admission No. 6.

adversarial process, and does not give rise to an FDCPA claim. *Miljkovic v. Shafritz & Dinkin*, 791 F.3d 1291 (11th Cir. Fla. 2015).  In *Miljkovic*, a collector obtained a writ of garnishment against a debtor in state court. *Id.* at 1294. The debtor then filed a claim of exemption from garnishment asserting he was the head of the household, and the collector filed a sworn reply disputing the debtor's right to a head of household exemption. *Id.* at 1295-96. After exchanging discovery which established that the debtor actually was the head of his household, the collector voluntarily dissolved its writ of garnishment. *Id.* at 1296.

The debtor then filed an FDCPA lawsuit claiming that the collector's sworn reply disputing his head of household exemption was an unfair, unconscionable, false, deceptive, "abusive, misleading, and unfair means" of collecting a debt. *Id.* The Eleventh Circuit affirmed the district court's dismissal of the complaint finding that the FDCPA complaint failed to state a claim for relief because "it would be passing odd to find that allegations that a state court filing asserted a legal position contrary to that of the consumer were sufficient to state a claim under § 1692e." Further, the Eleventh Circuit held that there was no FDCPA violation by "simply stat[ing the collector's] legal position relative to [the debtor's] claim of exemption" and that [the collector was] fully within [its] rights to assert [its] position with regard to Appellant's claim of exemption." *Id.* at 1308. As to the specific § 1692f(1) violation, the Eleventh Circuit simply could not see how taking a legal position in a state court case was an f(1) violation because it was not "deceitful or an affront to justice" or "unfair or unconscionable" and "disagreement is the nature of litigation." *Id.* at 1307, 1309.

Here, PRA's Collection Lawsuit asserted a legal position that it was entitled to prejudgment interest. PRA, Ms. Stratton, four (4) state judges, and four (4) federal court judges

are split[33] on whether PRA is entitled to such interest. Under the teachings of *Miljkovic*, this factual and legal disagreement cannot serve as the basis for a violation of sections 1692e or 1692f. Disagreement is the very nature of litigation and the filing of the Collection Lawsuit, which asserted a facially legitimate legal position, even if later determined to be wrong, simply is not an unfair, unconscionable, false, deceptive, abusive, misleading, or unfair means of collecting a debt. *See id.* Therefore, PRA is entitled to summary judgment as a matter of law.

**G.     PRA is Entitled to Summary Judgment Because the FDCPA's Bona Fide Error Defense Bars All of Ms. Stratton's Claims.**

If this Court determines that Ms. Stratton has presented evidence that may allow the Court to determine that GE waived its right to collect contractual interest, and if this Court also finds that requesting 8% interest in the Collection Lawsuit violates Section 1692e and 1692f of the FDCPA, then PRA is still entitled to summary judgment because PRA is entitled to the benefits of the FDCPA's bona fide error defense.

**1.     The FDCPA's Bona Fide Error Defense**

A debt collector may avoid liability under the FDCPA by showing that it lacked the necessary **intent** to commit an FDCPA violation, and by showing that the mistake in violating the FDCPA resulted from a bona fide error notwithstanding the debt collector's maintenance of procedures reasonably adapted to avoid the error. Specifically, § 1692k(c) of the FDCPA provides as follows:

> (c) **Intent**. A debt collector may not be held liable in any action brought under this title [15 U.S.C. §§ 1692 *et seq.*] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

---

[33] The Kentucky trial court in *Harrell* and this Court found that KRS 360.010 did not preclude PRA's request for prejudgment interest, while the Sixth Circuit and the Kentucky Court of Appeals both issued divided opinions.

To qualify for the bona fide error defense, PRA must prove by a preponderance of the evidence that: (1) the alleged violation of the FDCPA was unintentional; (2) the alleged violation was a result of a bona fide error (*i.e.*, one that is plausible and reasonable); and (3) PRA maintained procedures reasonably adapted to avoid any such error. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *see also Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (stating that the bona fide error defense is established by showing, by a preponderance of the evidence, that an FDCPA violation was unintentional and was the result of a bona fide error despite the use of procedures reasonably adapted to prevent that error).

Importantly, PRA must only show that the violation of the FDCPA was unintentional, not that PRA's act (filing the Collection Lawsuit that sought interest) which gave rise to the alleged violation was unintentional. *Lewis*, 135 F.3d at 402; *White v. Sherman Fin. Grp., LLC*, 984 F. Supp. 2d 841, 855 (E.D. Tenn. 2013). "To hold otherwise would effectively negate the bona fide error defense." *Lewis*, 135 F.3d at 402. Thus, PRA is not required to establish that it mistakenly sought interest in the Collection Lawsuit, but merely must show that it did not intend to seek a rate of interest that was not authorized.

In this case, the only evidence before the Court is that: (1) PRA's alleged violation of the FDCPA was unintentional because PRA intended to file its Collection Lawsuit in compliance with case law holding that a party is entitled to prejudgment interest on a liquidated debt; (2) PRA made mistakes of fact as to whether GE made a knowing, voluntary act to waive its right to collect contractual interest; (3) PRA's request for prejudgment interest was plausible and reasonable given the facts of the case and Kentucky law at the time PRA filed its Collection

Lawsuit;[34] and (4) PRA actually employed and maintained procedures "reasonably adapted" to avoid filing lawsuits which sought interest allegedly not allowed.

### a.    PRA's Alleged Violation was Unintentional.

The record before the Court amply demonstrates that if PRA requested interest when it should not have done so, its alleged wrongdoing was unintentional. Specifically, the only record evidence before this Court is that PRA had no intent to file a state court Collection Lawsuit that sought interest in excess of the amount allowed by law. To the contrary, the only evidence in the record is that PRA intends to never file a lawsuit that seeks prejudgment greater than what is allowed by state law and that comports with the rights transferred to it by the original creditor.[35]

To the extent this Court may now hold that PRA had no right to seek prejudgment interest and doing so in the Collection Lawsuit violated the FDCPA, PRA sought prejudgment interest only because it was factually mistaken as to whether GE waived the right to collect contractual interest, and there was no law in Kentucky indicating that an assignor's waiver of contract interest prevented an assignee from seeking any prejudgment interest.

### b.    PRA's Alleged FDCPA Violation was a Result of a Bona Fide Error that was Plausible and Reasonable.

As the *Stratton* dissent recognized, "[t]he district court concluded quite reasonably that PRA complied with state law in attempting to collect the debt owed by Stratton."[36] Moreover, the divided Sixth Circuit was the very first court to interpret KRS 360.010 in the manner it promulgated, followed by a divided Kentucky Court of Appeals in *Harrell*.

Thus, PRA filed its Collection Lawsuit and asserted it was entitled to prejudgment interest at a time when there was no state law prohibiting PRA's claim, and with PRA believing

---

[34] S*ee Stratton*, 770 F.3d at 452 (Batchelder, J., dissenting) ("We are the first circuit court to interpret Kentucky Revised Statutes Annotated § 360.010.")
[35] <u>Exhibit 6</u>, PRA's Discovery Response to Interrogatory No. 8
[36] *Stratton,* 770 F.3d at 452 (Batchelder, J., dissenting).

that it was complying with nearly two centuries of Kentucky precedent that required an award of prejudgment interest on a liquidated claim. *See Henderson Cotton Mfg. Co. v. Lowell Machine Shops*, 7 S.W. 142, 146 (Ky. 1888) ("[I]nterest is allowable as a matter of right and law upon an account from the time when by the contract it is payable, or from the time it becomes a liquidated one. . . ."); *see also Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991) (stating that prejudgment interest is awarded "as a matter of course" when the damages are liquidated).

Given this long-standing Kentucky precedent and the fact that four (4) state judges and four (4) federal court judges are split over the interpretation of KRS 360.010,[37] and the Kentucky Supreme Court has now decided to weigh in on the issue, this Court should agree that it was reasonable and plausible for PRA to seek 8% interest in the Collection Lawsuit.

### c.   PRA Maintained Procedures Reasonably Adapted to Avoid the Error.

"[T]he procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained' – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) (citations omitted). Here, the record before the Court makes it clear that PRA has procedures in place to avoid filing lawsuits that seek an interest rate not allowed, and that its procedures were reasonably adapted to ensure that no lawsuits were filed that sought an improper interest rate.

Specifically, PRA requires training of its employees to ensure that the interest charged on an account is no greater than that which is allowed by law or the original agreement. PRA has in place procedures and manuals to allow its employees to determine the interest rate that may

---

[37] The Kentucky trial court in *Harrell* and this Court found that KRS 360.010 did not preclude PRA's request for prejudgment interest, while the Sixth Circuit and the Kentucky Court of Appeals both issued divided opinions.

legally be charged to a specific debtor's account.[38] PRA researches and stays up-to-date on developments in applicable law, including, but not limited to, the amount of interest that may be legally charged on debtors' accounts.[39] Additionally, PRA trains its employees to review the information provided by an original creditor as to the contractual rate of interest that is included in the Load Data on the transferred account.[40] In this instance, the information GE provided represented that the contractual rate of interest applicable to Ms. Stratton's Account was 21.99%, not 0%. [D.E. 10-3]. As such, PRA is entitled to the bona fide error defense. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614-15 (6th Cir. 2009) (stating that to take advantage of the bona fide error defense, defendants should have presented evidence that they perform ongoing FDCPA training, procure the most recent case law, or have an individual responsible for continuing compliance).

### 2.  The Bona Fide Error Defense Protects Debt Collectors from FDCPA Claims Which Arise When a Debt Collector Seeks Interest at a Rate to Which it is Not Entitled.

The bona fide error defense protects debt collectors who unintentionally seek to collect unauthorized interest from a debtor despite maintaining reasonable procedures designed to prevent that mistake from occurring. For example, in *Wilhem v. Credico, Inc.*, the Eighth Circuit Court of Appeals was faced with an allegation that a debt collector violated the FDCPA by charging interest on past-due interest in violation of North Dakota law. 519 F.3d 416, 420 (8th Cir. 2008). The debt collector presented evidence that its employees were trained to segregate the

---

[38] Exhibit 6, PRA's Discovery Response to Interrogatory No. 8
[39] *Id*.
[40] *Id*; Exhibit 7, excerpts of PRA Training Manual. Pursuant to the Court's Protective Order, [D.E. 38], and Joint General Order 11-02, Exhibit 7, which was marked as Confidential during discovery, has been filed under seal without seeking leave from the Court. *See* [D.E. 38 at ¶ 7] ("The parties shall file such Confidential information only under seal."); Joint General Order 11-02, *In re: Electronic Case Filing Administrative Policies and Procedures*, § 8.1(a)(1) ("A motion for leave to seal is not required if the document is (1) already subject to a protective order. . . .").

unpaid principal balance from the past due interest so that the debt collector would not charge interest on past due interest. *Id.* However, the employee in charge of receiving the delinquent account mistakenly failed to break out the unpaid interest from the unpaid principal balance. *Id.* The debt collector set forth these facts and stated that the error was unintentional and that procedures were maintained to prevent this sort of error. The Eighth Circuit affirmed the lower court's award of summary judgment finding that any FDCPA violation was unintentional, and that the debt collector's procedures were reasonably adapted to prevent charging interest on unpaid interest because "affidavits and supporting documents establish that [the debt collector's] employees received specific instructions to "avoid such errors." *Id.* at 421.

The facts presented here are similar to those presented *Wilhelm*. PRA has put forth uncontroverted evidence that any attempt to seek more interest than allowed by law was unintentional, and that it trains its employees to review the information provided by the original creditor so as to determine the agreed upon, and, thus, legal rate of interest PRA may charge on every account. Accordingly, it is uncontroverted that PRA has met all the elements of the bona fide error defense, and that PRA is entitled to summary judgment as a matter of law.

### 3. The U.S. Supreme Court's Decisions in *Jerman* and *Heintz* Establish the Bona Fide Error Defense to Applies to State Court Litigation Activity.

In 2010, the U.S. Supreme Court issued its opinion in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* and held that the bona fide error defense does not apply to a debt collector's "mistaken interpretation of the legal requirements of the FDCPA." 130 S.Ct. 1605, 1608 (2010). *Jerman*, however, does not hold that all legal errors are automatically violations of the FDCPA. *Id.* at 1610 n.4. Rather, the U.S. Supreme Court specifically refused to rule on the issue of whether the bona fide error defense applies to violations of the FDCPA resulting from a misinterpretation of the requirements of state law or federal law other than the FDCPA. To date,

the Sixth Circuit has not taken a position on whether an alleged mistake of state law, when state law is unclear, is subject to the bona fide error defense.

When the alleged FDCPA violation results from the filing of a state court collection lawsuit, the U.S. Supreme Court's *Jerman* decision must be read in conjunction with the U.S. Supreme Court's 1995 decision in *Heintz v. Jenkins*, 514 U.S. 291 (1995). In *Heintz*, the Supreme Court held that lawyers are subject to the FDCPA whenever they meet the general definition of a "debt collector." *Id.* at 295. The concern in *Heintz* was that if the FDCPA were to apply to litigators attempting to collect a debt, a lawyer who brought a collection suit and then lost would be "automatically" liable to the debtor for violation of the FDCPA. The Supreme Court addressed the argument by referencing the "bona fide error" defense of § 1692k(c) and commented that "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Id.* at 295-96. In other words, the U.S. Supreme Court held that merely because a state court collection lawsuit was not successful, does not mean that the filing of the lawsuit was an action that could not legally be taken in violation of the FDCPA.

The *Jerman* Court then revisited its finding in the *Heintz* case noting:

[In Heintz w]e suggested that the availability of the bona fide error defense meant that the prospect of liability for litigating lawyers was not 'so absurd' as to warranty implying a categorical exemption unsupported by the statutory text, . . . . We had no occasion in *Heintz* to address the overall scope of the bona fide error defense. Our discussion of § 1692e(5) did not depend on the premise that a misinterpretation of the requirements of the Act would fall under the bona fide error defense.

\* \* \*

As in *Heintz*, we need not authoritatively interpret the Act's conduct-regulating provisions to observe that those provisions should not be assumed to compel absurd results when applied to debt collecting attorneys.

34

*Jerman*, 130 S.Ct. at 1618, 1622.

Thus, *Heintz* and *Jerman* read together establish that: (1) the bona fide error defense of § 1692k(c) does not apply to legal errors about the provision of the FDCPA itself, but that (2) it is absurd to apply the FDCPA to the filing of a good faith debt collection lawsuit which is subsequently lost.

The instant case would seem to be just such a good faith debt Collection Lawsuit if this Court determines that PRA's Collection Lawsuit sought prejudgment interest to which it was not entitled. That is, it is undisputed that until the Sixth Circuit issued its opinion in this case, the language of KRS 360.010 had never been interpreted in the manner the Sixth Circuit suggested. Under *Heintz*, PRA is entitled to advance good faith arguments in a state court lawsuit. The mere fact that *Jerman* does not allow mistakes in legal interpretations of the FDCPA to give rise to a bona fide error defense, however, does not obviate PRA's entitlement to the defense based on good faith litigation activity which may, or may not, turn out to be unsuccessful under state law. *See Heintz*, 514 U.S. at 295-96.

This conclusion is bolstered by examining opinions throughout the country that have held the filing of a state court collection suit outside of the applicable state statute of limitations does not give rise to FDCPA liability where the timeliness of the lawsuit is unclear or unsettled under state law. For example, in *Conway v. Portfolio Recovery Associates, LLC*, the Eastern District of Kentucky just recently stated that:

> Although the Sixth Circuit has not definitively ruled on exactly how attempts to collect time-barred debts fit within the framework of the FDCPA, there is broad agreement among other courts that the filing of a lawsuit to collect a time-barred debt may constitute a violation of various portions of § 1692e, ***if the debt collector knows or should have known*** that the debt is time-barred. . . .

13  F. Supp. 3d 711, 714 (E.D. Ky. 2014); *see also Gray v. Suttell & Assocs.*, No. CV-09-251-EFS, 2015 U.S. Dist. LEXIS 106239, at *10-11 (E.D. Wash. Aug. 11, 2015) ("[T]he bona fide error defense may be available in a case alleging defendants filed suit outside the applicable statute of limitations where the applicable limitations period has not been provided by the state legislature or resolved by the state courts."); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) (stating that an FDCPA violation is committed where a creditor threatens a lawsuit the creditor **"knows or should know"** is barred by the statute of limitations"); *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) (finding an FDCPA violation for the filing of a time-barred lawsuit where the attorney did not first perform a reasonable inquiry into whether the statute of limitations had tolled); *Hall v. LVNV Funding, LLC*, No. 3:13-CV-399-H, 2013 U.S. Dist. LEXIS 145137, at *6 (W.D. Ky. 2013) ("[A] violation is found when the debt collector knew or should have known the lawsuit was time-barred."); *Brewer v. Portfolio Recovery Associates, LLC*, No. 1:07-CV-113-M, 2007 U.S. Dist. LEXIS 76627, at*6 (W.D. Ky. Oct. 15, 2007) ("[W]here a debt collector threatens to sue on a debt it knew was time-barred by the statute of limitations, a violation of the FDCPA will lie.").

The "knowing or should have know" requirement in the above cases goes to the very heart of the "intent" requirement of the FDCPA's bona fide error defense. Thus, when state law is unclear, unsettled or when, as in this case, the Sixth Circuit creates new law, then a debt collector's good faith litigation activity which is later deemed improper, warrants application of the FDCPA's bona fide error defense as a complete bar to a plaintiff's FDCPA claims.

The facts of this case establish that PRA is entitled to the bona fide error defense as a complete bar to Ms. Stratton's claims against it. PRA has presented uncontroverted evidence that its violation was not intentional, that it researched the applicable law governing prejudgment

interest, and that it had in place procedures reasonably adapted to ensure that PRA did not seek to collect interest on an account greater than what was allowed. PRA's due diligence, the factual dispute regarding whether GE waived its right to contractual interest, and the fact that no court had ever before determined that PRA's actions were not allowed under Kentucky law, all establish that PRA's alleged violation of the FDCPA was unintentional, a bona fide error, and made despite the maintenance of procedures reasonably adapted to avoid the error. Therefore, PRA is entitled to the bona fide error defense, and this Court should grant PRA summary final judgment on all of Ms. Stratton's claims as a matter of law.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, PRA respectfully requests that this Court award PRA summary final judgment and grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 1st day of October, 2015.

**DINSMORE & SHOHL, LLP**

/s/ Joseph N. Tucker
Joseph N. Tucker, Esq.
R. Brooks Herrick, Esq.
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
502-540-2300 - phone
502-585-2207 - fax
joseph.tucker@dinsmore.com
brooks.herrick@dinsmore.com
*Counsel for Defendant PRA*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via ECF to the persons listed below this 1st day of October, 2015:

| | |
|---|---|
| Kenneth J. Henry, Esq. | James H. Lawson, Esq. |
| Henry & Associates, PLLC | Lawson at Law, PLLC |
| 331 Townepark Circle, Suite 200 | 115 Sherrin Avenue |
| Louisville, Kentucky  40243 | Unit #4 |
| ken@kennethhenrylaw.com | Louisville, KY 40207 |
| *Counsel for Plaintiff* | james@kyclc.com |
| | *Counsel for Plaintiff* |

/s/ Joseph N. Tucker
*Counsel for Defendant Portfolio Recovery*
*Associates, LLC*

9851742v10