# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### LEXINGTON DIVISION

DEDE STRATTON,

                    Plaintiff,

v.

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

                    Defendant.

**Case 5:13-CV-00147-DCR**

**DEFENDANT'S MOTION TO
DENY CLASS CERTIFICATION
AND MEMORANDUM IN SUPPORT**

Defendant, Portfolio Recovery Associates, LLC ("PRA"), through its undersigned counsel, hereby moves this Court for entry of an order denying class certification.[1] As grounds for this Motion, PRA tenders herewith an incorporated Memorandum and a proposed order.

## I.     INTRODUCTION

This Court should enter an Order denying the Plaintiff's, Dede Stratton ("Ms. Stratton"), right to maintain this case as a class action. Rule 23(c)(1)(A), Fed. R. Civ. P., provides that "[a]t an early practicable time after a person sues . . .  as a class representative, the court must determine by order whether to certify the action as a class action." Here, the discovery and the dispositive motion deadlines have passed, Ms. Stratton has actually filed a dispositive motion seeking a judgment of liability, but she has not yet filed a motion seeking class certification.[2] Ms. Stratton's attempt to determine PRA's alleged liability <u>before</u> she seeks class certification waives her right to maintain this case as a class action. Simply put, it is prejudicial to PRA for Ms. Stratton to seek class certification <u>after</u> a decision has been rendered on the merits.

Additionally, even if Ms. Stratton eventually does file a motion seeking certification of a class and the Court determines the same is timely, the evidence gathered in this case establishes

---

[1] On October 1, 2015, PRA filed its Motion for Summary Judgment on liability arguing that Ms. Stratton cannot maintain any individual claims against PRA.  See [D.E. 54].

[2] Before PRA answered the Amended Complaint, Ms. Stratton moved for certification of a class, which this Court properly denied as premature.  *See* [D.E. 24, 26].

that the two putative classes Ms. Stratton has proposed should not be certified for two independent reasons. First, Ms. Stratton lacks standing to represent her proposed "Dunning Letter" class because she is not a member of the putative Dunning Letter class. Second, Ms. Stratton's "Collection Lawsuit" class lacks numerosity and would require many individualized determinations on the merits of each putative class plaintiffs' claims to determine whether any of the eleven potential class members would even qualify as members of the proposed Collection Lawsuit class. Accordingly, without regard to the merits (or lack thereof) of Ms. Stratton's individual claims, this Court should enter an order denying class certification.

## II.   UNDISPUTED FACTS

**A.   Ms. Stratton's Credit Card Account with GE**

On September 14, 2007, Ms. Stratton, opened a Lowe's branded, GE Money Bank ("GE") credit card account (the "Account"). Ms. Stratton used the Account for several months and then failed to make payments for six consecutive months. The last Account statement had a billing date of December 19, 2008 – which is the date that GE charged off the Account. The amount charged-off was $2,630.95. The available credit card statements show an APR interest rate of 21.99%.[3] At the time of her default, the GE Credit Card Agreement included a choice of law provision indicating Utah law applied to Ms. Stratton's Account, stated that the interest rate on the Account was 21.99%, and also included a non-waiver clause which provided that GE could only waive a right via a signed writing. Specifically, the Credit Card Agreement stated:

---

[3] Exhibit 1, credit card statements.

**B.** The Periodic Rate for your Account is **.06025% (ANNUAL PERCENTAGE RATE 21.99%).**

**5. BALANCE SUBJECT TO FINANCE CHARGE.** The balance subject to Finance Charge is the Daily Balance of the Account. To determine the balance subject to Finance Charge, we take the beginning balance of your Account each day, which includes any unpaid Finance Charges and add any new Purchases and other debits for that day and subtract any payments and other credits applied that day. Each day we also add any Finance Charges. Late Payment Fees, and Returned Check Fees assessed that day. Debt cancellation fees and credit insurance premiums, if any, are not included. This gives us the "Daily Balance" of the Account. Any Daily Balance of less than zero will be treated as zero.

**6. WHEN FINANCE CHARGES BEGIN TO ACCRUE.** Purchases and other charges begin to accrue a periodic Finance Charge from the later of the date of the transaction or the first day of the billing period in which the transaction is posted to your Account. However, Finance Charges will not be imposed on new Purchases appearing on a billing statement if you pay the New Balance appearing on that billing statement (other than unexpired promotional and Special Payment Plan balances) in full by the Payment Due Date.

**18. WAIVER.** We may, in our sole discretion, choose to not exercise any right under this Agreement, including the right to impose the full amount of any charge, without waiving that right. Any waiver of a right by us must be in writing and signed by us. Except as we may agree in a signed writing, we will not waive any rights if we (a) accept a late or partial payment, (b) accept a check or other payment marked "payment in full" or tendered with other conditions or limitations, (c) extend the due date of any payment due under this Agreement, and/or (d) release any collateral or person responsible for your obligations under this Agreement.

**21. GOVERNING LAW.** This Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law). The legality, enforceability and interpretation of this agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Utah. We make decisions about granting credit to you from, extend credit to you under this agreement from, and accept your payments in Utah.

<sup>4</sup>

## B.    PRA Acquires Ms. Stratton's Credit Card Account from GE.

In January 2010, PRA purchased from GE a large portfolio of charged-off credit card accounts, which included Ms. Stratton's Account. As part of the sale, GE sent to PRA electronic data regarding Ms. Stratton's Account which is reflected in PRA's "Load Data" sheet. The "Load Data" from GE includes the date Ms. Stratton's Account was opened, the date of first delinquency, the charge-off date, the principal balance at charge-off and sale, and the contract interest rate which GE charged Ms. Stratton's Account at the time of charge-off in the amount of 21.99. The Load Data also shows that GE transferred to PRA the right to charge contract interest at the rate of 21.99%.[5]

---

[4] <u>Exhibit 2</u>. Credit Card Agreement.

[5] <u>Exhibit 3</u>, redacted copy of the Load Data; *see also* <u>Exhibit 4</u>, PRA's Responses to Ms. Stratton's Discovery Requests, Response to Interrogatory No. 2 ("Load Data sheet from GE (Bates Stamped PRA/Stratton 000017), showing the Stratton Account was delivered from GE to PRA with an existing contract interest rate of 21.99 %, which was the rate GE imposed on the Stratton Account at the time of default pursuant to the account statements GE sent to Ms. Stratton and then delivered to PRA in conjunction with the sale of the Stratton Account.").

**C.      PRA Files Suit in Kentucky State District Court to Collect the Account.**

On June 20, 2012, PRA filed a Collection Complaint in Kentucky's Scott County District Court to collect on the Account.[6] PRA's Collection Complaint sought to recover the charged-off principal balance, and also asserted in the body of the Collection Complaint (rather than in the prayer for relief) that the state court should award PRA pre-judgment interest on the principal balance in the amount of 8% from the date of charge-off.  PRA's Collection Complaint stated in its entirety:

**COMPLAINT**
*** *** *** *** ***

Comes the Plaintiff, the Creditor herein, by Counsel, and for its complaint, states as follows:

1.      That the account of DEDE STRATTON , bearing the account number ending in 0265, is in default.

2.      Said account is due and payable to Portfolio Recovery Associates, LLC, having acquired the account through sale, assignment or other legal means.

3.      The original creditor is  GE MONEY BANK, F.S.B..

4.      Said obligation is past due, and the Defendant(s) owes Plaintiff  $2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008  until date of judgment with 12% per annum thereafter until paid,  plus court costs.

WHEREFORE, Plaintiff demands judgment against the Defendant(s) for the sums plus interest set forth above and court costs.

MORGAN & POTTINGER, P.S.C.[7]

Attached to PRA's State Court Complaint were two documents supporting PRA's claims. First, PRA attached an affidavit from Dwayne Davis dated April 5, 2012, which indicated the principal balance due and owing on the Account, and which stated in the principal amount PRA

---

[6]  *See* Am. Complaint, [D.E. 10], ¶¶ 1, 7-18; Ex. A [D.E. 10-1]; Ex. C [D.E. 10-3].

[7]  [D.E. 10-1]. The fact that the assertion of the right to prejudgment interest was in the body of the Collection Complaint rather than in the "prayer for relief" section of the complaint was relevant to the Sixth Circuit in evaluating whether Ms. Stratton stated plausible FDCPA claims, and thus each of PRA's collection complaints for each putative class member would need to be evaluated.  *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 451 (6th Cir. Ky. 2014)

was seeking in the Collection Lawsuit.[8] Second, PRA attached a copy of the Load Data which indicated GE transferred to PRA the right to charge up to 21.99% interest.[9]

## D.    Ms. Stratton's Instant FDCPA Complaint Against PRA

### 1.    Substantive Allegations Against PRA

On July 24, 2013, Ms. Stratton filed her First Amended Putative Class Action Complaint in this Court, alleging that PRA's state court Collection Lawsuit ostensibly violated certain provisions of the Federal Fair Debt Collection Practices Act. 15 USC § 1692 *et. seq.* (the "FDCPA") [D.E. 10]. The Amended Complaint alleges that because the "Load Data" sheet attached to the State Court Complaint shows that the charge-off balance was the same as the sale balance, and because the PRA Affidavit attached to the State Court Complaint also shows that charge-off balance was the same as the sale balance, that the original creditor, GE, "did not charge or impose any interest on . . . [the] account during the thirteen-month period between charging off the account on December 19, 2008 and the sale or assignment of the account to PRA on January 15, 2010".[10] The Amended Complaint then conclusorily states that "GE Money Bank waived its contractual right to charge any interest on Ms. Stratton's Lowes credit card account ..."[11]. The Amended Complaint alleges that because GE ostensibly waived its right to contract interest, PRA could not request any interest in the state court complaint and that PRA's request for 8% prejudgment interest violated three separate provisions of the FDCPA.

### 2.    Putative Class Allegations Against PRA

As for Ms. Stratton's allegations of a putative class, she asserts two classes of all persons in the Commonwealth of Kentucky against whom PRA:

---

[8] [D.E. 10-2].
[9] [*See* Am. Complaint, D.E. 10, Ex. C [D.E. 10-3]] *See also*, Exhibit 4, PRA's Response to Ms. Stratton's Discovery Requests.
[10] [D.E. 10, Amended Complaint, ¶ 19; *see also* Exhibit 5, Ms. Stratton's Discovery Responses.
[11] [D.E. 10, Amended Complaint, ¶ 20]

    (a)      brought suit after, or within the last 12 months prior to, the date of filing the Complaint in this case and in which PRA alleged that the defendant owed prejudgment interest of 8% per annum on the debt at issue in the complaint for any time prior to PRA's acquisition of the debt; or

    (b)      sent a dunning letter after, or within the last 12 months prior to, the date of filing the Complaint in this case, in which PRA added interest of 8% per annum on the debt for any time prior to PRA's acquisition of the debt.[12]

Ms. Stratton seeks statutory damages and actual damages "consisting primarily of [approximately $2,500 in] attorney's fees and costs incurred in defense of the state-court collection action . . . ."[13] Notably, Ms. Stratton never alleges in her Amended Complaint that she actually received a dunning letter from PRA in the twelve months prior to the instant suit, and no evidence was presented in discovery indicating that Ms. Stratton ever received such a dunning letter from PRA.

**E.     Discovery**

Ms. Stratton submitted class discovery to PRA, but only sought information relevant to the Collection Lawsuit class. That is, Ms. Stratton's discovery requests did <u>not</u> seek any information about the Dunning Letter class. In response to Ms. Stratton's questions regarding the Collection Lawsuit class, PRA responded, under oath, that:

> between May 26, 2012 and May 26, 2013, PRA filed eleven lawsuits in Kentucky that attempted to collect a credit card debt and included a demand for 8.00% prejudgment interest on accounts that were originated by the G.E. Money Bank portfolio of accounts which PRA acquired and of which Ms. Stratton's account was a part.[14]

---

[12] [D.E. 10, ¶¶ 36 and 37]; (Hereinafter these two putative classes shall be referred to as the: (A) Collection Lawsuit Class and (B) Dunning Letter Class).

[13] See <u>Exhibit 3</u>, Ms. Stratton's Rule 26 Disclosures; <u>Exhibit 5</u>, Ms. Stratton's Discovery Responses.

[14] <u>Exhibit</u> 4, PRA's Response to Ms. Stratton's Discovery.

In short, the only evidence before this Court is that in the one year before Ms. Stratton's instant suit was filed, PRA filed only eleven collection lawsuits against consumers who could potentially be members of the putative class.

PRA also submitted discovery to Ms. Stratton on the issue of whether GE waived the right to charge contractual interest. In response, Ms. Stratton stated that her only evidence of waiver was that the principal amount of Ms. Stratton's Account balance was the same amount at charge-off as on the date the Account was sold to PRA.[15] Notably, Ms. Stratton provided no information regarding GE's express, written intent to relinquish its right to charge interest on Ms. Stratton's Account at the contract rate, or GE's intent to relinquish its right to charge interest on any other accounts in the portfolio it sold to PRA.

## III.    <u>STANDARD OF REVIEW</u>

"In order for one or more litigants to represent all parties in a class, four prerequisites must be met: (1) the class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately represent the interests of the class." *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 569 (6th Cir. 2004) (quoting FED. R. CIV. P. 23(a)) (internal quotation marks omitted). The Court may only certify a class after a rigorous analysis reveals that the requirements of Rule 23 are met. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." (quoting *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted)). "A class is not

---

[15] <u>Exhibit 4</u>, Stratton's Discovery Responses, No. 3.

maintainable as a class action by virtue of its designation as such in the pleadings." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted).

In addition to the four requirements enumerated in Rule 23(a), to be certified, a class must fall within one of the types of class actions set forth in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citations omitted). Stratton's Amended Complaint asserts that class adjudication is proper under Rule 23(b)(1) and (b)(3). *See* [D.E. 10 at ¶¶ 45-47].

> For class treatment to be proper under Rule 23(b)(1), Ms. Stratton must show that
>
> prosecuting separate actions by or against individual class members would create a risk of:
>> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their interests.

Fed. R. Civ. P. 23(b)(1). The Supreme Court has strongly cautioned against the overuse of (b)(1) classes. *Yost v. First Horizon Nat'l corp.*, No. 08-2293, 2011 U.S. Dist. LEXIS 60000, at *63 (W.D. Tenn. June 3, 2011) (citations omitted).

A class may be certified under Rule 23(b)(3) only if the Court determines "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Ms. Stratton bears the burden of proving that all Rule 23 certification requirements have been met. *Young,* 693 F.3d at 537 ("The party seeking class certification has the burden to prove the Rule 23 certification requirements." (citations omitted)).

## IV.    <u>ARGUMENT</u>

**A.    PRA Properly Moves this Court to Deny Class Certification.**

Even though Ms. Stratton has not moved for class certification, it is procedurally proper for PRA to move this Court to deny class certification at this time. Repeatedly, courts have interpreted Rule 23, Fed. R. Civ. P., to permit <u>either</u> party in a putative class action suit to move for a class determination. *See, e.g., Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 334 (E.D. Ky. 2002) ("This matter is before the Court for consideration of the Purdue Defendants' Motion to Deny Class Certification. This Motion will be granted because the Plaintiffs have not shown a factual basis to support certification of a class under Rule 23 of the Federal Rules of Civil Procedure."); *Cook Cnty. College Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972), *cert. denied*, 409 U.S. 848, 34 L. Ed. 2d 90, 93 S. Ct. 56 (1972), *reh'g denied*, 414 U.S. 883, 38 L. Ed. 2d 131, 94 S. Ct. 29 (1973)("[o]ne opposing a class action may move for an order determining that the action may not be maintained as a class suit."); *City of New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295, 297 (2d Cir. 1969) (granting defendants' motion to deny class certification); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (affirming a district court's grant of motion to strike nationwide class allegations and noting, "[t]hat the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature"); *Saunders v. Bellsouth Adver. & Publ'g Corp.*, Civ. A. No. 98-1885, 1998 U.S. Dist. LEXIS 20523, at*1-*2, n.1 (S.D.N.Y. 1998) (granting defendant's motion to deny class certification because plaintiffs failed to move in a timely fashion); 7B C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1785, p. 89-90 (1986) (noting that either party may move for a class determination).

Accordingly, PRA properly moves this Court for an Order denying class certification.

**B.      Ms. Stratton Has Not Timely Moved for Class Certification.**

PRA requests that this Court deny class certification because Ms. Stratton has not timely moved for class certification. Rule 23(c)(1)(A), Fed. R. Civ. P., provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Here, both the discovery and the dispositive motion deadlines have passed, Ms. Stratton has sought a judgment of liability, but she still has not filed a timely motion for class certification.[16] There is no explanation for such a delay, and this Court may properly deny class certification in this case.

**1.      Ms. Stratton's Dispositive Motion Waives Her Right to Seek Class Certification.**

Now that Ms. Stratton has sought summary judgment on liability, she has <u>waived</u> her right to seek class certification. For example, in *Owens v. Hellmuth & Johnson*, 550 F. Supp. 2d 1060, 1070 (D. Minn. 2008), the court denied class certification after the plaintiff filed a dispositive motion. The court reasoned that when "a named plaintiff seeks a ruling on the merits and then later seeks class certification, all potential class members are placed in a 'win-win' situation: if the ruling goes against the named plaintiff, then others can 'opt out' of the class and not be bound by that adverse decision, and if the ruling is favorable, then others can 'opt in' to the class knowing that the defendant's liability has already been established. Such 'one-way intervention' is to be avoided because it is inherently unfair to defendants." *Citing Paxton v. Union Nat. Bank* 688 F.2d 552, 558 (8th Cir 1982); *In re Philip Morris, Inc.*, 214 F.3d 132, 134-35 (2d Cir. 2000); 6A Federal Procedure, Lawyer's Edition § 12:275, at 375 (2004 & Supp. 2007). *Id.* at 1070.

Indeed, courts typically interpret Rule 23(c)(1)(A)'s mandate that certification be determined "[a]t an early practicable time" as a requirement that the issue of class certification

---

[16] *See supra*, n.2

be addressed <u>prior</u> to any substantive resolution of the merits of the underlying complaint. In fact, this general rule forms the centerpiece of the United States Supreme Court's 1974 decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974):

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "as soon as practicable after the commencement of [the] action . . . .." In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (5th Cir 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:
>
> > In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Id.*, at 427.[17]

Similarly, the Seventh Circuit has held that ruling on the merits of the underlying complaint would unjustly expose the defendant to a "one-way intervention" by potential class members, whereby a potential class member could await a resolution of the merits of the claim before deciding whether or not to join the lawsuit. *See Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. Ill. 1975), *citing American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 545-49 (1974).

    As set forth above, Ms. Stratton's motion for summary judgment on liability has resulted in her waiving the right to maintain this case as a class action. Accordingly, this Court should enter an order denying class certification as a matter of law.

---

[17] *See Ahne v. Allis Chalmers Corp.*, 102 F.R.D. 147, 148 (E.D. Wis. 1984).

## 2. Ms. Stratton's Delay in Seeking Certification Has Prejudiced PRA

Courts have determined that there are two relevant factors to whether a motion for certification is untimely: (1) the circumstances causing the delay; and (2) whether the opposing parties have been prejudiced by the delay. 1 Newberg, at § 3.43. Here, because discovery has closed and Ms. Stratton has already filed a dispositive motion, Ms. Stratton has no excuse for not yet filing a timely motion for class certification. *See E. Tex. Motor Freight v. Rodriguez*, 431 U.S. 395, 405 (1977) (stating that failure to move in a timely fashion for certification of a class "bears strongly on the adequacy of representation that those class members might expect to receive"); *Fitzhenry v. ADT Corp*., No. 14-80180, 2014 U.S. Dist. LEXIS 166243, at *13-14 (S.D. Fla. Nov. 3, 2014) (denying motion as untimely when plaintiff waited until the pre-trial motion deadline).

Further, PRA is prejudiced by Ms. Stratton's delay and failure to file a timely motion for certification. Even now, after discovery has been completed, PRA is uncertain as to the exact nature and scope of the putative class(es) which Ms. Stratton proposes. Though she has proposed two statewide classes, the only evidence before the Court is one small putative class of eleven potential class members which lacks numerosity. Ms. Stratton's failure to file a certification motion prolongs PRA's uncertainty as to the scope of the class(es) that Ms. Stratton may be contemplating. Furthermore, waiting until after she has sought judgment on liability places all putative class members in the "win-win" situation, which the *Hellmuth & Johnson* case and the U.S. Supreme Court have warned is prejudicial to a putative class defendant.

Finally, PRA has been prejudiced by the filing of a putative class in which Ms. Stratton never seriously sought class certification. By filing her case as a putative class, PRA vigorously contested liability due to its theoretically increased potential exposure to class damages. To the

contrary, if this case was filed as an individual case, rather than as a putative class, PRA's litigation strategy may have been completely different, and early settlement may have been more vigorously pursued, thus potentially obviating the need for years of litigation and thousands of dollars in defense costs.

Because Ms. Stratton has not timely filed a motion for class certification, her delay has severely prejudiced PRA. Therefore, this Court need not analyze this matter any further, and PRA respectfully requests that this Court enter an order denying certification of Ms. Stratton's two proposed putative classes.

## C.      Ms. Stratton is Not a Member of the Putative "Dunning Letter" Class.

Assuming that this Court determines that Ms. Stratton has not waived her right to seek class certification and that any subsequent motion for class certification is timely, Ms. Stratton should not be allowed to certify a "Dunning Letter" class because Ms. Stratton did not receive a dunning letter from PRA in the year before suit was filed. Therefore, Ms. Stratton is not a member of the proposed class and she cannot serve as its representative. The "Dunning Letter" class Ms. Stratton seeks to represent includes

> all persons in the Commonwealth of Kentucky . . . [to who PRA] sent a dunning letter after, or within the last 12 months prior to, the date of filing the Complaint in this case, in which PRA added interest of 8% per annum on the debt for any time prior to PRA's acquisition of the debt.[18]

Ms. Stratton is not a member of the proposed "Dunning Letter" class because she does not even allege in her Amended Complaint that she received a dunning letter. Also, discovery has not shown that Ms. Stratton ever received such a letter from PRA in the year before the instant suit was filed. "A threshold issue that is implicit in a Rule 23 inquiry is that a court

---

[18] [D.E. 10].

conclude that the named plaintiff[] seeking certification propose an identifiable, unambiguous class in which [she is a member]." *Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *13 (S.D. Ohio Sept. 12, 2007) (citations omitted); *see also Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) ("[T]he class representative must be a member of the class he claims to represent." (citations omitted)).

Because there is no evidence on which this Court can conclude that Ms. Stratton is a member of the putative "Dunning Letter" class, this Court must deny certification of this proposed class. *See Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337 (E.D. Ky. 2002)("[E]ven if the allegations in the complaint would support the existence of a well-defined 'class,' there is not enough evidence or information for the Court to conclude that the named Plaintiffs would fall within the proposed 'class.'").

**D.      The Putative "Collection Lawsuit" Class is Not Appropriate for Class Treatment.**

Assuming that this Court determines that Ms. Stratton has not waived her right to seek class certification and that any subsequent motion for class certification is timely, Ms. Stratton should not be allowed to certify a "Collection Lawsuit" class because Ms. Stratton cannot satisfy her burden under Rule 23.

> **1.      A Class Action is Not Appropriate for the "Collection Lawsuit" Class Because Each Putative Class Member's Claims Will Require Individual Analysis and Adjudication.**

Here, the crux of Ms. Stratton's legal argument is that GE waived the right to charge contract interest on Ms. Stratton's Account. She then implicitly extrapolates that if GE waived the right to charge contract interest on Ms. Stratton's Account, then GE also must have also waived the right to charge contract interest on all of the other ten accounts at issue in the putative

class. However, the individual analysis required to prove waiver prevents Ms. Stratton from meeting her burden under Rule 23 and dictates that this Court deny class certification.

The only evidence of waiver which Ms. Stratton presents are the two PRA documents (the Load Data and the Affidavit) which ostensibly show that "GE did not accrue any interest on the Account after charging off [Ms. Stratton's] Account" because the charge-off balance was the same as the sale balance.[19] Ms. Stratton has not submitted, however, any evidence of GE's express intent to relinquish its right to charge contract interest on Ms. Stratton's Account or any other account at issue, which is a necessary prerequisite to establish wavier in light of the non-waiver clause. *See Nat'l Surety Marine Ins. Corp. v. Wheeler*, 257 S.W.2d 573 (Ky. 1953) (stating that waiver requires a voluntary and "intentional relinquishment of a known right."); *KFC Corp. v. Kazi*, No. 3:11-CV-00475, 2012 U.S. Dist. LEXIS 180424 (W.D. Ky. Dec. 20, 2012)(a non-waiver clause precludes a finding of an implied waiver).

Even assuming Ms. Stratton's paltry evidence is sufficient to establish that GE impliedly waived the right to charge contract interest, because the determination of waiver requires an individual inquiry, even if GE waived the right to interest on Ms. Stratton's Account, it would not inure to the benefit of any remaining class members. Thus, before any of the potential eleven putative class members could be part of a class action, the Court would have to hear evidence on the merits of each class member's claim – i.e. – whether GE expressly or impliedly waived the right to contract interest. "Where that type of inquiry is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition." *Snow v. Atofina Chems., Inc.*, 2003 U.S. Dist. LEXIS 27295, *25-26 (E.D. Mich. Mar. 31, 2003).

---

[19] As set forth in PRA's Motion for Summary Judgment, Ms. Stratton's alleged "proof" does not amount to GE's waiver of the right to charge contract interest and ignores the plain language of the "non-waiver clause" in Ms. Stratton's credit card contract which allows GE not to exercise a right, "including the right not to impose any charge, without waiving that right." (Exhibit 2)

Indeed, before any putative class plaintiff could even be a member of the class, the Court would have to conduct an inquiry into at least ten different legal and factual issues for each putative class member to determine if they can be members of the "Collection Lawsuit" class and if their claims are viable.  For example, for each putative class member the Court would at least have to determine the following:

1.    Whether Utah or Kentucky substantive law is applicable to each putative class member's claims based on the application of any choice-of-law provision contained in the class members' credit card agreements;

2.    Whether the putative class member's credit card agreement contains a "non-waiver" clause;

3.    If there is a non-waiver clause, whether the class member received a signed writing from GE expressly waiving GE's right to charge interest;

4.    Whether the account balance at the time of charge-off and at sale were the same amount for each putative class member's account;

5.    Whether PRA attached an affidavit to each collection complaint PRA filed against each putative class member, and the terms of such affidavit;

6.    If GE did not expressly waive its right to contract interest, whether GE's actions towards each putative class member impliedly waived GE's right to contract interest despite the non-waiver clause;

7.    Whether, if GE did not post interest to an account balance, GE intended to waive its right to contract interest;

8.    Whether GE intended to transfer and did transfer to PRA the right to charge contract interest on each account;

9.    Whether PRA's request for prejudgment interest was in the "prayer for relief" or in the body of each collection complaint; and

10.    Whether the facts establish that PRA committed an FDCPA violation.

In short, for each putative class plaintiff, this Court would be required to determine the ultimate issue of liability – i.e. whether under the applicable law, whether GE had the right to charge

contract interest, or whether GE "voluntarily and intentionally relinquished a known right" to charge contract interest on each account and whether PRA violated the FDCPA.

Because "waiver" is such a fact dependent, individualized inquiry, waiver cases are inherently unsuited for class actions. For example, in *Randleman v. Fidelity National Title Ins. Co.*, 264 F.R.D. 298 (N.D. Ohio 2009), the court refused to certify a class based on the waiver of rights finding that "such [an] intensely individualized inquiry is antithetical to class certification" because "any waiver theory would require individualized inquiry into whether and how waiver may have occurred." *Id.* at 305-06; *see also McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 880 (D. S.D. 1982) ("[I]ndividualized nature of the proof required . . . precludes the Court from finding that questions of fact common to all class members predominate over issues affecting only individual class members.").

Furthermore, whether GE may have waived its right to charge interest on Ms. Stratton's Account, has no bearing on whether GE waived its right to charge interest on any of the other ten putative class members' accounts because a waiver of a contract term by a party with respect to a specific counterparty, has no effect on that party's ability to enforce the same term in a separate contract with a different and unrelated counterparty. *See ISI Sys., Inc. v. Equifax, Inc.*, No. 93-12186-MEL, 1996 U.S. Dist. LEXIS 882, at *6 (D. Mass. Jan. 12, 1996) (holding that the failure to insist upon adequate notice of claim under indemnification agreement as to claim by unrelated third party did not waive notice as to claim by plaintiff under same agreement).

As is fully demonstrated above, if the instant putative class is certified, the class would degenerate into a series of individual determinations of whether GE had the right or waived the right to charge interest on each of the putative plaintiffs' accounts. As such, class certification is not appropriate. *Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783, 786 (6th Cir. 2005)

("Determining whether the plaintiffs can clear the predominance hurdle . . . requires [the Court] to consider how a trial on the merits would be conducted if a class were certified. . . . Though not a determination on the merits, the Rule 23(b)(3) analysis helps prevent the class from degenerating into a series of individual trials." (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003))).

Furthermore, it is the individual, case-by-case analysis that precludes class certification in this action, not the ultimate decision that may be reached by the Court. *See Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 454 (S.D.N.Y. 2005) ("[W]hether meritorious or not, there will be individualized questions . . . and these will require the court to review the transactions of each plaintiff individually. These individual issues will also predominate over any common issues shared by the parties."). As is fully demonstrated herein, these individualized determinations prevent Ms. Stratton from meeting almost all of the requirements of Rule 23(a) and (b). Accordingly, Ms. Stratton has <u>not</u> met her burden of showing that a class action is appropriate, and this Court may properly enter an order denying class certification.

**2.      Ms. Stratton Fails to Meet the Requirements of Rule 23(a).**

In order to meet the requirements of Rule 23(a), Ms. Stratton has the burden of showing that: "(1) the class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately represent the interests of the class." *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 569 (6th Cir. 2004) (quoting Fed. R. Civ. P. 23(a)) (internal quotation marks omitted).

Ms. Stratton cannot satisfy each of Rule 23(a)'s requirements, and class certification must therefore be denied.

### a.   The Putative Collection Lawsuit Class Lacks "Numerosity."

Ms. Stratton cannot establish that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty." *Phillips v. Phillip Morris Cos.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted) (emphasis added).

A putative class of only eleven members, like in the instant case, lacks numerosity under prevailing case law. *See Gen.Tel. Co. v. EEOC*, 446 U.S. 318, 331, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980) (stating that a class of fifteen is insufficient to prove numerosity); *Guy v. Lexington-Fayette Urban County Gov't*, 488 F. App'x 9, 22 (6th Cir. 2012) (noting that "[a] class of twenty or fewer is usually insufficiently numerous. 5 Moore's Federal Practice at § 23.22(1)(b)"); *Miri v. Clinton*, 300 F.R.D. 319, 322 (E.D. Mich. 2014)(finding "that eleven members is not sufficient to satisfy the numerosity requirement of Rule 23(a)(1)"); *Nat'l Ass'n of Gov't Emps.v. City Pub. Serv. Bd.*, 40 F.3d 698, 716 (5th Cir. 1994) (holding that a class of eleven is insufficient to prove numerosity); *Dragon v. Quicken Loans, Inc.*, 269 F.R.D. 695, 700 (S.D. Ga. 2010)("[N]ine potential class members is insufficient to satisfy the numerosity requirement.").

Here, because PRA's Responses to Ms. Stratton's Discovery Requests is the only class discovery that was undertaken, it is undisputed that the proposed Collection Lawsuit class has

only eleven class members. Thus, the putative class lacks numerosity, this Court need not inquire further, and this Court should enter an order denying the proposed Collection Lawsuit class.

### b.   This Suit Presents Individualized Determinations, Not Common Questions of Law or Fact.

The "Collection Lawsuit" class does not present common questions of law or fact because, as set forth above, the Court will have to independently determine at least ten individual legal and factual issues surrounding each of the eleven class members' accounts, such that the answer to a single question will not further this litigation. The second prerequisite for a class action is that the case present "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

"Succinctly stated, even though the plaintiff[] contend[s] that there are common claims to all potential class members which contain common issues of law and fact, the commonality of each issue is altered by the individual facts and situations of each plaintiff. This destroys anything common to the class." *Chamberlain v. Am. Tobacco Co.*, No. 1:96-CV-2005, 1999 U.S. Dist. LEXIS 5843, at *30-31 (N.D. Ohio Apr. 12, 1999) (citations omitted) (internal quotation marks omitted); *see also Sprague*, 133 F.3d at 398 ("Because each plaintiff's claim depend[s] upon facts and circumstances peculiar to that plaintiff, class-wide relief [is] not appropriate.").

Ms. Stratton's proposed Collection Lawsuit class does <u>not</u> present common questions of fact because the facts concerning whether GE waived its right to charge interest on each putative class members' account will require an individualized inquiry into the merits of each of the eleven putative plaintiffs' claims. Additionally, there are no common questions of law because

one of the individualized inquiries in which the Court will be required to engage is the applicable substantive law that applies to each class members' claims, which may or may not be governed by a choice-of-law provision included in the applicable terms and conditions governing the account.

Accordingly, certification must be denied.

### c.   Varying Facts or Substantive Law to be Applied to the Accounts Could Provide PRA With Defenses Against Class Members That Are Not Typical of PRA's Defenses Against Ms. Stratton.

Ms. Stratton's claims and PRA's defenses as to Ms. Stratton may not be typical of the other class members. Ms. Stratton must show her claims and PRA's defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Sprague*, 133 F.3d at 399 (citations omitted) (internal quotation marks omitted).

Ms. Stratton's claims are not typical of the other eleven potential class members because the individual facts that will be necessary to determine whether GE expressly or impliedly waived the right to charge interest on the accounts will vary from class member to class member. Depending upon the different interactions each class member had with GE, the claims of a class member could be stronger or weaker, and PRA may have defenses to the claims of some class members that it does not have against Ms. Stratton. This precludes a finding that the typicality requirement is met. *See in re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 Bankr. LEXIS 2921, at *9-10 (Bankr. S.D.N.Y. May 11, 2005) ("West's claims are also atypical of the claims of the

putative class members for other reasons. Many of the putative class members, whose claims date back to 1990, will be subject to statute of limitations defenses, whereas West may not.").

For example, in *Sprague v. GMC*, the Sixth Circuit determined that the typicality requirement was not met because "[e]ach claim . . . depended on each individual's particular interactions with [the defendant] -- and these . . . varied from person to person." *Sprague*, 133 F.3d at 399. Likewise, each claim in this action will depend upon the individual's particular interactions with GE. *See Randleman*, 264 F.R.D. at 306 ("[A]ny waiver theory would require individualized inquiry into whether and how waiver may have occurred."). Therefore, even if Ms. Stratton is able to assert a successful cause of action against PRA, which she cannot, that does not mean every member of the class will be able to assert a successful cause of action against PRA.

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. That premise is not valid here." *Sprague*, 133 F.3d at 399; *see also Chamberlain*, 1999 U.S. Dist. LEXIS 5843, at *33-34 ("In *Sprague*, the Sixth Circuit found that where the substantive claims depend on individual permutations, the claims of named plaintiffs who have the same general complaint against the defendant as the class are not typical." (citations omitted)). Ms. Stratton has not satisfied the typicality requirement because the resolution of Ms. Stratton's claim will have no bearing on the outcome of the claims of other potential class members.

### 3.    Ms. Stratton Cannot Meet the Requirements of Rule 23(b)(1) or (b)(3).

In addition to the four requirements enumerated in Rule 23(a), to be certified, a class must also fall within one of the types of class actions set forth in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citations omitted). Ms. Stratton

alleges that certification is proper under Rule 23(b)(1) and (b)(3). *See* [D.E. 10 at ¶¶ 45-47]. Ms. Stratton has failed to meet her burden that this action is proper for class adjudication under Rule 23(b) and this Court must deny class certification.

      **a.**      **Ms. Stratton Cannot Meet the Requirements of Rule 23(b)(1)(A).**

This case cannot be certified as a class under Rule 23(b)(1)(A) because it does not put PRA at risk of being required to conform with incompatible standards of conduct. A class action may be maintained under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). However, "[t]he fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984). Additionally, "the possibility that individual actions would have a precedential effect is not enough." *Bacon v. Honda of Am. Mfg.*, 205 F.R.D. 466, 483 (S.D. Ohio 2001). The Supreme Court has strongly cautioned against the overuse of (b)(1) classes. *Yost v. First Horizon Nat'l corp.*, No. 08-2293, 2011 U.S. Dist. LEXIS 60000, at *63 (W.D. Tenn. June 3, 2011) (citations omitted).

Here, there is no risk that PRA will be subjected to incompatible standards of conduct if the putative class members' bring individual actions. The Sixth Circuit has already stated that, if Kentucky law applies and <u>if</u> GE waived the right to collect interest, KRS 360.010 does not allow PRA, as an assignee, to seek prejudgment interest. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 447-48 (6th Cir. 2014). Thus, there is no risk that one court would allow PRA to impose interest under KRS 360.010 after a waiver of contractual interest by GE and one

would not. *See Emp'rs Ins. of Wausau v. Fed. Deposit Ins. Corp.*, 112 F.R.D. 52, 54 (E.D. Tenn. 1986) ("Rule 23(b)(1)(A) is designed to protect against the nonclass party's being placed in a stalemated or conflicted position and is applicable only to actions in which there is not only a risk of inconsistent adjudications but also where the nonclass party could be sued for different and incompatible affirmative relief."). The only differing adjudications that would be possible in this instance is that some putative class members may be able to put forth enough individual facts to prove waiver by GE while some may not, or the substantive law that applies to the claims may vary among class members. This is plainly not enough to meet the requirements of Rule 23(b)(1)(A). *See Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 282 (N.D. Ohio 2006) ("[W]here class members' claims rest on divergent factual and legal issues, there is little risk of conflicting individual adjudications in the first place."); *see also In re Bendectin*, 749 F.2d at 305.

### b.      Ms. Stratton Cannot Meet the Requirements of Rule 23(b)(1)(B).

This action cannot be certified as a class under Rule 23(b)(1)(B) because invocation of this provision is limited to a case involving a "limited fund," which is not applicable here. "The Supreme Court and Sixth Circuit have recently explained that Rule 23(b)(1)(B) is limited to traditional 'limited fund' cases in which there is a 'fixed fund in the traditional sense: a fixed resource, such as a mineral deposit, or a fixed amount of money, such as a trust." *Pettrey*, 241 F.R.D. at 282 (quoting *Telectronics Pacing Sys., Inc. v. TPC Holdings, Inc.*, 221 F.3d 870, 877 (6th Cir. 2000) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-42 (1999)); *see also Toldy v. Fifth Third Mortg. Co.*, No. 1:09-CV-377, 2011 U.S. Dist. LEXIS 113240, at *7 (N.D. Ohio May 24, 2011) (explaining that 23(b)(1)(B) is limited to cases where there is a "fixed fund in the traditional sense").

This case plainly does not present a situation where certification of a class under Rule 23(b)(1)(B) is warranted. Each individual class member may bring an individual suit and they are entitled to any damages they may be awarded in a judgment. There is no fixed fund out of which any judgment rendered in favor of any of the putative class members must be satisfied. *See Beckert v. TPLC Holdings, Inc. (In re Telectronics Pacing Sys.)*, 221 F.3d 870, 877 (6th Cir. 2000) ("The Supreme Court noted that classic examples of such actions include actions by shareholders to declare a dividend or otherwise to declare their rights and actions charging a breach of trust by an indenture trustee or other fiduciary that requires an accounting or similar procedure to restore the subject of the trust."). Accordingly, this case is inappropriate for class adjudication under Rule 23(b)(1)(B).

### c.   Ms. Stratton Cannot Meet the Requirements of Rule 23(b)(3) Because the Individualized Determinations Predominate Any Common Questions, Preventing Class Treatment From Being a Superior Method of Adjudication.

Even if the evidence of GE's alleged waiver is sufficient for Ms. Stratton, it cannot establish a waiver by GE with respect to the entire putative class. Because this suit will necessarily involve an individual determination of the merits, a class action is not superior to individual suits. Accordingly, Ms. Stratton cannot meet her burden of showing that this action is appropriate for class adjudication under Rule 23(b)(3), and this Court should enter an order denying class certification.

Here, a class action is not the superior method for adjudicating the Ms. Stratton's putative class members' claims due to the individualized determinations that will be required. To certify a class under Rule 23(b)(3), Ms. Stratton must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). When considering superiority, "the district court should also compare other means of

disposing of the suit to determine if a class action is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 630 (6th Cir. 2011) (citations omitted) (internal quotation marks omitted).

This case presents identical circumstances to those presented to the Sixth Circuit in *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield*, 654 F.3d 618. There the Sixth Circuit agreed with the Magistrate Judge who found that a class action was not superior because "prior to determining [the] central legal claim," the court would be required "to make so many individualized determinations as to proposed class members . . . that a class action could not be a superior form of adjudication." *Pipefitters*, 654 F.3d at 631. The Sixth Circuit agreed that class treatment was not superior because the case would require "looking at the contract terms and funding arrangements of [all the] class members. Given the necessary number of individual inquiries, a class action cannot be a superior form of adjudication." *Id.* at 631 (citations omitted).

Based upon the individual inquiry into each alleged class members' account history and GE's actions with respect to the accounts that would be required to adjudicate the proposed class members' claims, Ms. Stratton has not presented a case where class treatment is superior to individual suits. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where many individual inquiries are necessary, a class action is not a superior form of adjudication." (citations omitted)). Accordingly, class certification must be denied.

## V.     Conclusion

For the foregoing reasons, PRA respectfully requests that the Court enter an order denying class certification and grant such other and further relief as the court deems just and proper.

Respectfully submitted this the 8th day of October, 2015.

Respectfully submitted,

**DINSMORE & SHOHL, LLP**

/s/ Joseph N. Tucker
Joseph N. Tucker
R. Brooks Herrick
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
502-540-2300 - phone
502-585-2207 - fax
joseph.tucker@dinsmore.com
*Counsel for Defendant PRA*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Motion was served via ECF to the persons listed below this 8th day of October, 2015:

| | |
|---|---|
| Kenneth J. Henry<br>Henry & Associates, PLLC<br>331 Townepark Circle, Suite 200<br>Louisville, Kentucky  40243<br>ken@kennethhenrylaw.com<br>*Counsel for Plaintiff* | James H. Lawson<br>Lawson at Law, PLLC<br>115 Sherrin Avenue<br>Unit #4<br>Louisville, KY 40207<br>james@kyclc.com<br>*Counsel for Plaintiff* |

/s/ Joseph N. Tucker
*Counsel for Defendant Portfolio Recovery Associates, LLC*

9909099v4