UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DEDE STRATTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-147-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PORTFOLIO RECOVERY | ) | **MEMORANDUM OPINION** |
| ASSOCIATES, LLC, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment [Record Nos. 54; 56] filed by Plaintiff Dede Stratton and Defendant Portfolio Recovery Associates, LLC ("PRA"), in addition to the plaintiff's motion to strike an exhibit relied upon by the defendant [Record No. 62]. PRA argues that it is entitled to summary judgment because: (i) the applicable Credit Card Agreement is governed by Utah law; (ii) Stratton cannot demonstrate that PRA's assignor waived its contractual or statutory rights to collect prejudgment interest on the underlying debt prior to PRA's purchase of the debt; (iii) certain sections of the Fair Debt Collection Practices Act ("FDCPA") do not apply to the present circumstances; and (iv) PRA is protected by the bona fide error defense. [Record No. 54, pp. 2–4]

Conversely, Stratton contends that the Court cannot rely on the Credit Card Agreement in determining whether to grant PRA's motion for summary judgment because the document does not fall within any exception to the rule against hearsay. [Record No. 62,

- 1 -

p. 4]  As a result, she contends that PRA has failed to produce evidence of its entitlement to contractual prejudgment interest for the time period prior to purchasing Stratton's debt.  [*Id.*, p. 2]  Further, Stratton claims that even, if the Agreement is admissible, PRA did not acquire its predecessor's contract rights.  [*Id.*, p. 5]  In the alternative, she alleges that PRA's predecessor intentionally waived any right it had to accrue interest on her debt, and that PRA does not qualify for the bona fide error defense.  [*Id.*, pp. 24, 30]  Finally, Stratton takes issue with PRA's argument that its acts do not constitute violations of the FDCPA.  [*Id.*, p. 36] Due to the alleged inadmissibility of the Agreement and the law of the case, Stratton argues that she is entitled to summary judgment.

For the reasons outlined below, the Court will deny Stratton's motion to strike and motion for summary judgment, and grant PRA's motion for summary judgment.

## I.

As explained previously, PRA purchases and collects on debt.  [Record No. 27, ¶¶ 1, 27]  On January 4, 2010, it purchased Stratton's credit card debt from GE Money Bank, F.S.B./Lowes ("GE").  [Record No. 10, ¶ 1]  Stratton had opened the related credit card account in September 2007, but GE charged-off the account on December 19, 2008, at an amount of $2,630.95.  [Record Nos. 10, ¶ 1; 54-2]  From that date forward, GE did not charge interest on Stratton's debt.  [Record No. 10, ¶¶ 17, 18]  As a result, when PRA acquired the debt in 2010, it continued to list a principal amount of $2,630.95.  [*Id.*, ¶ 18]

On June 20, 2012, PRA filed a collection action in Kentucky's Scott County District Court to collect on the account.  [Record No. 10, ¶ 1]  The state court complaint alleged that Stratton owed PRA $2,630.95, with interest "at the rate of 8% per annum from December 19,

2008[,] until the date of judgment with 12% per annum thereafter until paid, plus court costs." [Record No. 10-1] Consequently, Stratton filed this against PRA, asserting that the company violated certain provisions of the FDCPA by attempting to collect on interest between the date GE charged-off her debt and the date that PRA bought it. [Record No. 1] First, she asserted that PRA violated 15 U.S.C. § 1692f(1) because the 8% prejudgment interest rate was not authorized by any agreement or permitted by law. Second, she argued that PRA falsely represented the character of her debt under 15 U.S.C. § 1692e(2)(A). Third, she claimed that PRA's state court suit was a "threat" under 15 U.S.C. § 1692e(5).

When PRA filed a motion to dismiss the Class Action Complaint, Stratton filed an Amended Complaint to address issues outlined in the motion to dismiss. [Record No. 10] Originally, this Court dismissed Stratton's claims. However, on appeal, the Sixth Circuit reversed and remanded the matter, holding that Stratton "plausibly alleged that PRA violated the Fair Debt Collection Practices Act." *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 452 (6th Cir. 2014).

In its analysis, the court noted that PRA conceded, for purposes of the appeal, that GE had waived its right to collect prejudgment interest at the contractual rate. *Id.* at 447. Because Ky. Rev. Stat. § 360.010(1) states that the statutory prejudgment interest rate does not apply where the parties agree to be "bound" to a contractual rate of interest, it reasoned that GE could not revive its statutory right to interest by waiving its contractual right to interest. *Id.* at 448. Further, the court concluded that PRA, as GE's "assignee," was not entitled to collect either type of interest because GE had waived both. *Id.*

Because the plaintiff alleged that PRA demanded an amount to which it was not entitled, the court determined that she plausibly stated a claim that PRA violated the three aforementioned provisions of the FDCPA.  *Id.* at 451.  However, the court stated that, "[i]t may be that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest, but there is currently no such provision before us."  *Id.* at 448.

During discovery following remand, PRA obtained the Credit Card Agreement between GE and Stratton.  [Record No. 41, ¶ 6]  The Court permitted PRA to amend its Answer to include the Agreement.  [Record No. 79]  The Agreement identifies the annual percentage rate of 21.99%, which corresponds to Stratton's Account Statements.  [Record Nos. 54-3; 54-2]  In addition, the Agreement states that Utah law applies where federal law does not.  [Record No. 54-3]  Further, the Agreement contains a non-waiver clause.  [*Id.*]

 Prior to PRA's filing of the Amended Answer, it moved for summary judgment on all Stratton's claims.  [Record No. 54]  Thereafter, Stratton moved for summary judgment in her favor.  [Record No. 56]  Subsequently, she filed a response in opposition to the defendant's motion for summary judgment [Record No. 61], along with a motion to strike the Credit Card Agreement [Record No. 62].  PRA then filed a reply regarding its motion for summary judgment [Record No. 84], a response in opposition to Stratton's motion for summary judgment [Record No. 63], and a response to her motion to strike [Record No. 83].  Next, Stratton filed replies regarding her motion for summary judgment and her motion to strike.  [Record Nos. 85; 90]  Finally, the Court permitted PRA to file sur-replies opposing Stratton's motion for summary judgment and motion to strike.  [Record Nos. 88; 93]  These

- 4 -

matters are ripe for review.  Because several of the parties' arguments concern the alleged Credit Card Agreement, the Court will first address Stratton's motion to strike.

## II.

"[S]ummary judgment rulings must be based on admissible evidence."  *Turner v. Scott*, 119 F.3d 425, 430 (6th Cir. 1997).  As a result, "hearsay evidence cannot be considered on a motion for summary judgment" unless it falls within an evidentiary exception.  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *see* Fed. R. Civ. P. 56(c)(4) (affidavits used for summary judgment must be made on basis of personal knowledge, set forth admissible evidence, and show witness' competence to testify).

According to Rule 803(6) of the Federal Rules of Evidence, business records are admissible.  However, such records must satisfy four requirements:

> (1) [they] must have been created in the course of a regularly conducted business activity; (2) [they] must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have created the document[s]; and (4) the document[s] must have been created by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071−72 (6th Cir. 2014).  "A custodian or otherwise qualified witness must attest that the proffered document meets these conditions."  *Id.* at 1072 (citing Fed. R. Evid. 803(6)(D)).

"Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record."  *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998).  Further, an "other qualified witness" need not have "personal knowledge" of the preparation of the record.  *Dyno Construction Co. v. McWane, Inc.*, 198

F.3d 567, 575–76 (6th Cir. 1999).  Instead, he or she must merely "be familiar with the company's recordkeeping practices." *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 328 (6th Cir. 2015).  In *Fambrough*, the Sixth Circuit held that two affiants were not "other qualified witnesses" because they did not indicate whether it was their company's regular practice to rely on the documents of another organization in the ordinary course of business, or whether the other organization merely sent their company the records at the beginning of litigation. *Id.* at 327.

Further, "Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document." *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999).  Rather, the affiant must demonstrate that the incorporating business relies upon the accuracy of the document incorporated and that there are "other circumstances indicating the trustworthiness of the document." *Id.*  In other words, the affiant must testify to the recordkeeping practices of the incorporating entity. *Fambrough*, 611 F. App'x at 329.  In *United States v. Hathaway*, the court held that the Government could introduce the business records of a company under investigation.  798 F.2d 902, 907 (6th Cir. 1986).  The court reasoned that, "there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted." *Id.* at 906; *but see United States v. Selby*, 33 F.3d 55 (Table), 1994 WL 416262, *10 (6th Cir. Aug. 8, 1994) (requiring that document be generated in the course of the foundation witness' business).

Likewise, in *United States v. Hollie*, the court held that the owner of a company could demonstrate that his company integrated the business record of another company.  25 F.3d 1051 (Table), 1994 WL 194164, *3 (6th Cir. May 16, 1994).  In that case, the affiant testified to receiving the invoice at issue at the time he received shipment of the invoice's subject and comparing the contents of the subject to the invoice.  *Id.*

This Court has recently addressed the issue raised by Stratton.  In *Caudill v. Cavalry SPV I, LLC*, a representative of Cavalry SPV I was qualified to introduce the credit card agreement at issue, even though it was created by a bank.  Civil No. 14-32-ART, 2014 WL 4230811 (E.D. Ky. Aug. 25, 2014).  The Court reasoned that, "[d]ebt collectors routinely rely upon documents that they have 'integrated into [their] records' even when they do 'not have personal knowledge' of or 'personally participate in [their] creation, or even know who actually recorded the information.'"  *Id.* at *4 (quoting *United States v. Petroff–Kline*, 557 F.3d 285, 292 (6th Cir. 2009)); *see generally*, *Martin v. Cavalry SPV I, LLC*, Civil No. 13-88-GFVT, 2014 WL 1338702 (E.D. Ky. Mar. 31, 2014).

Here, Stratton makes several arguments why the Credit Card Agreement is not admissible.  First, she claims that PRA fails to offer a qualified witness to introduce the Agreement as a business record.  [Record No. 90, p. 2]  Second, the plaintiff contends that a document produced during litigation cannot qualify as a business record.  [*Id.*]  Third, she challenges whether the Agreement actually pertains to her account.  [Record No. 62, p. 4] Fourth, Stratton takes issue with the argument raised by PRA that she is estopped from

claiming the inadmissibility of the Agreement because she made references to it during discovery.  [Record No. 90, p. 5]  The Court will address each of these contentions in turn.[1]

### A.   Business Records Exception

The Credit Card Agreement is admissible as a business record under Rule 803(6) of the Federal Rules of Evidence because PRA has proffered a qualified witness.  Tara Privette, Senior Vice President of Core Operations at PRA, submitted a sworn affidavit addressing each of the four requirements of the business record exception.  [*See* Record No. 83-2.] While she cannot testify to the creation of the Agreement by GE, she has knowledge of PRA's integration of the Agreement and reliance upon it.  *See Hathaway*, 798 F.2d at 906; *Fambrough*, 611 F. App'x at 329.

Privette can attest that the Agreement was created by someone with knowledge at GE at or near the time of the act, and then transmitted to PRA.  *See* Fed. R. Evid. 803(6)(A). [Record No. 83-2, ¶ 13]  Even though she did not personally participate in the creation of the Agreement, she is able to demonstrate PRA's reliance upon the documents transmitted by GE.  *See Caudill*, 2014 WL 4230811, at *4.  Specifically, she states that it was "PRA's regular business practice to receive, review, load, store, and rely" on credit card agreements received from GE upon the purchase of a debt.  *See* Fed. R. Evid. 803(6)(C).  [*Id.*, ¶ 9]

---

[1]   Stratton also challenges PRA's argument that proper production of documents during discovery renders the documents admissible into evidence.  [Record No. 90, p. 3]  It is unclear whether PRA actually made this argument, or whether it merely sought to establish that the Agreement was properly made part of the record.  [Record No. 83, p. 3]  The Court simply notes that the Agreement was properly made part of the record through PRA's Motion for Leave to File an Amended Answer [Record No. 41, p. 2].  To the extent that Stratton now claims that PRA violated discovery procedures, this accusation is too vague and untimely for the Court to consider it during the resolution of the motion to strike.  *See, e.g.*, *Patterson v. Best Buy Co., Inc.*, No. 1:13-cv-49, 2015 WL 248428 (S.D. Ohio Jan. 20, 2015).

Further, she is a qualified witness under Rule 803(6)(D) because she is familiar with PRA's recordkeeping practices. *See McWane*, 198 F.3d at 575. [*Id.*, ¶¶ 1–5] However, Stratton challenges Privette's competency to establish that the record was kept in the regular course of PRA's business activities, *see* Fed. R. Evid. 803(6)(B), and attempts to demonstrate that the source of the information is not trustworthy. *See* Fed. R. Evid. 803(6)(E).

### 1.      Production During Litigation

The plaintiff cites *Melendez-Diaz v. Massachusetts* for the proposition that documents obtained or acquired by the proffering entity during litigation are not admissible as business records. 557 U.S. 305, 321 (2009). [Record No. 90, p. 2] However, *Melendez-Diaz* and subsequent cases dealt with documents *prepared* in the course of litigation. *Id.* at 321. The Supreme Court was particularly concerned with an entity calculating the use of a record for trial. *Id.*; *see also AMPAT/Midwest Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990) (addressing documents "prepared specifically for use in litigation"). Those cases do not mandate the inadmissibility of the Credit Card Agreement at issue.

On the other hand, Stratton could be arguing that the Agreement was not "kept in the course of a regularly conducted activity" of PRA because it was only acquired for litigation purposes. *See* Fed. R. Evid. 803(6)(B). But Stratton's interpretation of that provision is at odds with the Sixth Circuit's interpretation of the phrase. For example, in *Hathaway*, a federal agent was able to introduce a company record, even though the record was acquired by the Government for litigation (or investigative) purposes. *See Hathaway*, 798 F.2d at 906. The important factor was the Government's reliance on the accuracy of the record. *Id.* at 907.

- 9 -

And in *Fambrough*, the court was concerned with the fact that the two affiants were unfamiliar with their own company's recordkeeping practices.  611 F. App'x at 329.  Here, Privette has established her familiarity with PRA's recordkeeping procedures.  [Record No. 83-2, ¶ 1]  Additionally, while PRA did not have physical possession of the Credit Card Agreement upon purchasing Stratton's debt from GE, GE's records became "fully integrated with" PRA's business records upon the sale of the account.  [*Id.*, ¶ 9]  Moreover, PRA reserved the right to request documents related to the account from GE as they became necessary.  [*Id.*, ¶ 6]  As a result, they were "kept" in the ordinary course of PRA's business, though their physical location was with GE.  *See Caudill*, 2014 WL 4230811, at *4 ("According to SPV's uncontroverted declaration, it integrated the Bank's records into its own as soon as it purchased the account.").

### 2.      Unreliability

Stratton also questions the reliability of the Credit Card Agreement because it allegedly does not contain any features identifying its applicability to her account.  [Record No. 62, p. 4]  The burden is generally on the opponent to prove that the source of the record lacks trustworthiness.  Fed. R. Evid. 803(6)(E).  However, when the affiant represents a company that integrated, rather than created, the document at issue, some circuits look for circumstances indicating the trustworthiness of the document.  *See Air Land Forwarders*, 172 F.3d at 1343.  In an unpublished opinion, this circuit has stated that reliable recordkeeping practices of the integrating company establish the trustworthiness of the document.  *See Fambrough*, 611 F. App'x at 329.

Here, there are indications that the Credit Card Agreement pertains to Stratton's account.  For example, the Agreement identifies the annual percentage rate as 21.99%, in accordance with Stratton's Credit Card Statements.  [Record Nos. 54-2; 54-3]  In addition, the Branch identified in the Agreement is "C822," which corresponds to other documents PRA received from GE.  [*See, e.g.*, Record No. 54-5.]  Moreover, this Court agrees with the conclusions in *Caudill* and *Martin*.  *See Caudill*, 2014 WL 4230811 [Record No. 19, p. 5, therein]; *Martin*, 2014 WL 1338702 [Record No. 20, p. 5, therein].  Stratton fails to demonstrate any unreliability in the circumstances surrounding the creation or maintenance of the Agreement.  *See* Fed. R. Evid. 803(6)(E).  Further, she had two months before the close of discovery to depose GE or PRA regarding the circumstances surrounding PRA's acquisition of the Agreement.  [*See* Record Nos. 30, ¶ 4; 41.]  Additionally, it appears that Trivette can testify to the reliability of PRA's recordkeeping practices.  *See Fambrough*, 611 F. App'x at 329.  [*See* Record No. 83-2, ¶¶ 11–12.]

### B.     Estoppel

Because the Credit Card Agreement is admissible as a business record, it is not necessary for the Court to consider PRA's argument that Stratton is estopped from asserting that the Agreement is inadmissible.  [Record No. 83, p. 9]  However, the Court notes that Stratton's Amended Complaint and discovery responses do not seem to contemplate the *particular* Agreement at issue.  [*See, e.g.*, Record Nos. 10, ¶¶ 20, 22, 24, 31, 33; 58-6, pp. 3, 5.]

- 11 -

### III.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The parties make several arguments why each is entitled to summary judgment in her/its favor.  First, PRA asserts that due to the Credit Card Agreement, Utah law applies, and Utah law permitted GE (and its assignee) to request prejudgment interest at the statutory rate even though GE had agreed to a contractual interest rate.  [Record No. 54, pp. 11−15]  Conversely, Stratton contends that GE never assigned the full account to PRA, meaning that PRA has no rights under the Agreement.  [Record No. 61, pp. 5−15] She also claims that PRA is estopped from arguing that Utah law applies.  [*Id.*, p. 26] Alternatively, PRA argues that Stratton fails to provide evidence that GE waived its right

- 12 -

to collect prejudgment interest at the contractual rate.  [Record No. 54, pp. 15−22]  In her response, Stratton asserts that GE waived its right to collect contractual prejudgment interest by charging-off Stratton's account.  [Record No. 61, pp. 15−24]  Lastly, the parties dispute the applicability of the FDCPA's bona fide error defense to PRA's conduct.  [Record Nos. 54, pp. 28−36; 30−35]

### A.   GE's Assignment of Stratton's Debt to PRA

Stratton alleges that PRA only purchased the "receivables" of her account from GE, meaning that PRA did not acquire GE's contractual rights.  [Record No. 61, p. 5]  She begins by noting that the "Bill of Sale" states that GE sold Stratton's "receivables," rather than her "account," to PRA.  [Record No. 61-2, p. 1]  Next, she highlights that the "Forward Flow Receivables Purchase Agreement" distinguishes "receivables" from "accounts."  [Record No. 61-3, pp. 2, 5]  However, Stratton fails to explain the significance of these different definitions.  She does not point to anything in the Bill of Sale or Forward Flow Agreement that indicates that a sale of receivables excludes the assignment of contractual rights.[2]

Instead, Stratton points to a case from a Minnesota district court to demonstrate that the sale of receivables does not include the transfer of contractual rights.  *See Munoz v. Pipestone Financial, LLC*, 397 F. Supp. 2d 1129 (D. Minn. 2005).  In *Munoz*, the court held that the sale of a receivable did not entitle the buyer to collect interest that had not yet accrued, in addition to attorney fees, both of which were addressed in the underlying credit

---

[2]      Likewise, Stratton's references to credit card securitization agreements are not persuasive.  [Record No. 61, p. 9]  While she establishes that "receivables" are distinct from "accounts," she fails to demonstrate that GE's assignment of the "receivables" to PRA excludes GE's contractual rights.

- 13 -

card agreement between the debt-seller and the debtor.  *Id.* at 1132.  The limited reasoning in *Munoz* is not persuasive—the court merely relied on a definition from Black's Law Dictionary, instead of addressing Minnesota law.  *Id.* at 1131 n.3.

In any event, this Court agrees with the reasoning in *Martin*.  There, the Court highlighted that the credit card agreement at issue applied to "successors and assigns."  2014 WL 1338702, *5 (internal quotation marks omitted).  Likewise, Stratton's Credit Card Agreement states, "[w]e may sell, assign or transfer any of our rights or obligations under this Agreement or your Account . . ."  [Record No. 54-3]  In *Martin*, the Bill of Sale referred only to "receivables," as is the case here.  *Id.*  [Record No. 61-2, p. 1]  The Court analyzed Ky. Rev. Stat. § 355.9-404(1), modeled after U.C.C. § 9-318(1)(a), explaining that the "rights acquired by an assignee to accounts receivable are subject to . . . '[a]ll terms of the agreement between the account debtor and assignor . . .'"  *Id.*  It also referenced several courts from other states and districts that interpreted statutes resembling Ky. Rev. Stat. § 355.9-404(1) in the same way.  *Id.* at *7.  Thus, GE transferred its contractual rights to PRA upon selling Stratton's receivables.[3]

In addition, this Court agrees with the reasoning in *Caudill*.  In that case, this Court found that the plaintiff was estopped from arguing that the defendant could not invoke the

---

[3]      Stratton also contends that because PRA only had a limited right of access to "Account Documents" upon purchasing Stratton's receivables, and the Credit Card Agreement is an "Account Document," GE did not assign the Agreement to PRA.  [Record Nos. 61, p. 14; 61-3, p. 12]  Without more explanation, this appears to be a *non sequitur*.  It is entirely plausible that GE agreed to furnish "Account Documents" to PRA as they became necessary, rather than immediately upon the sale of Stratton's account.  The fact that PRA did not have a certain document in its possession does not necessarily mean that it did not have any rights outlined in that document.  Further, the "Load Data" sheet PRA obtained from GE indicates the contractual interest rate on Stratton's debt, demonstrating why PRA might not have needed the Agreement to identify the applicable contractual rate.  [Record No. 54-4]

terms of the underlying credit card agreement because he had sought a benefit from the agreement. 2014 WL 4230811, at *5. For example, the Court noted that the plaintiff alleged that the defendants "exceeded their contractual and statutory right[s] and assessed interest or fees they had no legal right to collect under the Agreement." *Id.* at *6 (internal quotation marks omitted). Similarly, Stratton asserts that "PRA violated the FDCPA by attempting to collect from Ms. Stratton interest that was neither authorized by agreement nor permitted by law." [Record No. 10, ¶ 1] Because Stratton's "claims rely on and are intertwined with the Agreement," she is "estopped from dodging" the Agreement's terms. *Id.*

### B.    Choice of Law

PRA asserts that, due to the choice-of-law provision in the Credit Card Agreement, its right to collect prejudgment interest is governed by Utah law, which is more favorable to its case. [Record No. 54, p. 11] Further, PRA contends that the non-waiver clause in the Agreement demonstrates that GE never waived its right to collect interest at the contractual rate. [*Id.*, p. 17] Stratton does not specifically respond to these arguments. Instead, she argues that PRA is estopped from claiming that Utah law applies, and she proceeds on the theory that PRA has no rights under the Agreement. [Record No. 61, pp. 25–26]

### 1.    Estoppel

Stratton asserts that PRA is judicially estopped from arguing that Utah law applies because PRA claimed its entitlement to prejudgment interest under Kentucky law through two motions to dismiss and on appeal. [Record No. 61, p. 26] "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially

- 15 -

if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). A party's later position must be "clearly inconsistent" with its previous position. *Id.* Further, courts usually require the party to have been successful with its earlier position. *Id.* Additionally, courts should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

With regard to this issue, the Court finds persuasive the reasoning in *Engel v. Buchan*, 791 F. Supp. 2d 604 (N.D. Ill. 2011). In that case, the district court found that a party was not judicially estopped from arguing a choice-of-law issue where the issue was not affirmatively litigated in the prior litigation. *Id.* at 608. Similarly, Stratton and PRA did not argue choice-of-law in the previous litigation. In addition, PRA was not successful in its earlier position under Kentucky law. *See New Hampshire*, 532 U.S. at 750. While Stratton may experience some prejudice because she used resources in appealing the Court's prior decision under Kentucky law, there is no indication that PRA's argument is an "improper use of judicial machinery" or would endanger the "essential integrity of the judicial process," due to the absence of bad faith. *See id.*; *Engel*, 791 F. Supp. 2d at 608. Consequently, PRA is not estopped from claiming that Utah law applies based on the provision in the Credit Card Agreement.

### 2. Enforceability of Choice-of-Law Provision

The choice-of-law provision in the Credit Card Agreement states that:

> [t]his Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law). The legality, enforceability and interpretation of this agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and as in Utah. We make decisions about granting credit to you from, extend credit to you under this agreement from, and accept your payments in Utah.

[Record No. 54-3, p. 2]

In a federal-question case, the Court generally uses the choice-of-law principles of federal common law. *Medical Mut. of Ohio v. DeSoto*, 245 F.3d 561, 570 (6th Cir. 2001). However, when the federal claim is based on the interpretation of state contract law, the forum state's choice-of-law principles apply. *See, e.g.*, *Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (applying Ohio choice-of-law in case involving FDCPA and related state law claims). As a result, the Court applies Kentucky choice-of-law principles in determining the enforceability of the choice-of-law provision in the Credit Card Agreement.

Kentucky follows sections 177 and 178 of the Restatement (Second) of Conflict of Laws.[4] *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878–79 (Ky. 2013). According to the Restatement, the Court should apply a choice-of-law provision unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the

---

[4]     Federal common law follows the Restatement, as well. *See id.*

chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Law § 187(2).

Here, "[t]he first exception does not apply because there is a reasonable basis for the parties' choice of law"—GE's Utah citizenship. *See Wise*, 780 F.3d at 715. [*See* Record No. 50, p. 4.] With respect to the second exception, the Supreme Court of Kentucky has stated that, "[c]ourts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in controlling laws or judicial precedent." *Hodgkiss-Warrick*, 413 S.W.3d at 880 (enforcing choice-of-law provision and applying Pennsylvania law because there was no evinced overriding Kentucky public policy to the contrary). Although Kentucky and Utah usury laws differ, the Court has not found an overriding Kentucky public policy contrary to two individuals' ability to establish a contractual rate of interest while maintaining a default statutory rate of interest. Consequently, the choice-of-law provision in the Credit Card Agreement is enforceable under Kentucky law. *See id.*

Further, a choice-of-law provision applies to "substantive" issues. *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994). And a request for prejudgment interest is substantive. *Miller Truck Lines, LLC v. Central Refrigerated Serv., Inc.*, 781 F. Supp. 2d 488, 497 (W.D. Ky. 2011) (citing *Felix v. Lykins Enterprises, Inc.*, No. 2009-CA-000312-MR, 2010 WL 4137276, *5 (Ky. Ct. App. Oct. 22, 2010)). In the present action, PRA requests prejudgment interest. Therefore, as prescribed by the choice-of-law provision, this issue will be addressed under Utah law.

- 18 -

### C.    Interpretation of Utah Code § 15-1-1

Under Utah Code § 15-1-1, "[u]nless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."  Utah courts have not expounded greatly on the question at issue in this case—whether parties who establish a contractual rate of interest waive the default statutory interest rate.  *Compare Wilcox v. Anchor Wate, Co.*, 164 P.3d 353, 363 (Utah 2007) (stating in dictum that "[o]nly when the parties to a contract fail to specify a rate of interest does the default rate specified in section 15–1–1(2) apply") *with Lignell v. Berg*, 593 P.2d 800, 809 (Utah 1979) ("In the absence of agreement of the parties, the rate could not be less than six percent.") (referring to a prior version of Utah Code § 15-1-1).

However, federal district courts have interpreted state usury statutes comparable to Utah's statute as permitting recovery of interest at the statutory rate even if the parties agreed to a contractual rate of interest.  *See, e.g.*, *Peters v. Northland Grp., Inc.*, No. 14-0488-CV, 2014 WL 4854658, (W.D. Mo. Sept. 30, 2014)[5]; *Grochowski v. Daniel N. Gordon, P.C.*, No. C13-343-TSZ, 2014 WL 1516586 (W.D. Wash. Apr. 17, 2014).[6]   The Sixth Circuit even commented on those cases in the *Stratton* opinion, noting that, "[s]uch differences among statutes reinforce the need to read Kentucky's statute carefully and apply its particular language." *Stratton*, 770 F.3d at 448 n.1.

---

[5]     The Missouri usury statute reads, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon."  Mo. Rev. Stat. § 408.020.1.

[6]     The Washington usury statute reads, "Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties."  Wash. Rev. Stat. § 19.52.010(1).

For comparison, Kentucky's usury statute explicitly states that:

> "[t]he legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate[:] . . . and any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, *shall be bound* for such rate of interest as is expressed in any such contract, obligation, assumption, or guaranty, and *no law of this state* prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith . . .

Ky. Rev. Stat. § 360.010(1) (emphasis added).  The court reasoned that the "shall be bound" language indicated that parties who contract for their rate of interest extinguish their right to collect statutory interest.  *Stratton*, 770 F.3d at 447.  Because Utah's statute does not contain such language, parties contracting for a rate of interest under that statute do not lose their right to collect interest at the statutory rate.  *See, e.g.*, *Peters*, 2014 WL 4854658, at *2.

Consequently, even if GE waived its right to collect contractual interest, it maintained its right to collect statutory interest.  *See id.*; *Grochowski*, 2014 WL 1516586, at *3 ("charge off" did not waive interest at contractual rate, but defendant's servicer may have waived statutory interest by other actions, such as notifying plaintiff that accrued interest was $0.00 and interest rate was 0%).  PRA, standing in the shoes of its assignor, also maintained the right to collect interest at the statutory rate.  *See Sunridge Develop. Corp. v. RB & G Engineering, Inc.*, 230 P.3d 1000, 1003 (Utah 2010).  And Stratton does not allege that PRA, itself, waived its right to collect interest at the statutory rate.  [*See, generally*, Record Nos. 10; 61.]

- 20 -

Thus, PRA did not violate the FDCPA by attempting to collect interest at a rate below the statutory rate.[7]  *See Gates v. Asset Acceptance, LLC*, 801 F. Supp. 2d 1044, 1048 (S.D. Cal. 2011) (addressing 15 U.S.C. § 1692f).; *Lane v. Gordon*, Civil No. 10-793-KI, 2011 WL 488901, *1 (D. Or. Feb. 7, 2011) (addressing 15 U.S.C. § 1692e).

## D.    Waiver

Even if PRA's assignor waived its right to collect interest at the statutory rate under Utah law through the establishment of a contractual rate, Stratton still must prove that GE waived its right to collect contractual interest.[8]  *See Stratton*, 770 F.3d at 447 ("*[F]or the purposes of this appeal*, PRA concedes that GE waived its right to collect interest at the contractually agreed upon rate of 21.99%.") (emphasis added).

### 1.    Non-Waiver Clause

First, PRA alleges that a non-waiver clause in the Credit Card Agreement raises Stratton's burden of proof in demonstrating that GE waived its right to collect interest at the agreed-upon rate.[9]  [Record No. 54, p. 17]  The non-waiver clause states that:

---

[7]     *See* 15 U.S.C. § 1692f(1) (prohibiting collection of interest unless authorized by agreement or permitted by law); 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of the character, amount, or legal status of a debt); 15 U.S.C. § 1692(e)(5) (prohibiting the threat to take action that cannot legally be taken).

[8]     The parties address waiver under Kentucky law.  The Court addresses waiver only as an alternative holding because of the absence of case law construing the Utah usury statute. Consequently, it addresses waiver under Utah law.

[9]     A choice-of-law issue is concealed within this argument.  In *Wise*, the court stated that despite a contract's choice-of-law provision referring to Pennsylvania law, Ohio law may have applied to a fee-shifting provision in the contract because the fee-shifting provision conflicted with a fundamental Ohio policy.  780 F.3d at 718.  Here, the non-waiver clause does not conflict with Kentucky policy.  *See, e.g.*, *Universal C.I.T. Credit Corp. v. Middlesboro Motor Sales, Inc.*, 424 S.W.2d 409, 411 (Ky. 1968) (upholding non-waiver clause); *Home Fin. Co. v. Frazier*, 380

[w]e may, in our sole discretion, choose not to exercise any right under this Agreement, including the right to impose the full amount of any charge, without waiving that right.  Any waiver of a right by us must be in writing and signed by us."

[Record No. 54-3]  Under Utah law, an anti-waiver provision is viewed as "merely one factor to consider in determining whether a party has waived its rights under the agreement."[10]

*ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 245 P.3d 184, 196 (Utah 2010) (quoting *Living Scriptures, Inc. v. Kudlik*, 890 P.2d 7, 10 n.5 (Utah Ct. App. 1995)).

## 2.    PRA's Expert

Because PRA supports many of its arguments regarding waiver with information from its expert witness Jane Cloninger, it is necessary to evaluate Stratton's challenges to the admissibility and relevance of her potential testimony before moving to the question of waiver.  [Record No. 61, pp. 27–30]  Cloninger stated that she was asked to provide an opinion regarding "whether it is customary for credit grantors . . . to intentionally relinquish their right to charge interest at the contract rate when a credit card account is charged-off." [Record No. 54-6, p. 20]  She was also asked to give her opinion concerning "whether or not posting interest to an account balance after charge-off or not sending periodic statements to a

---

S.W.2d 91, 93 (Ky. 1964) (upholding non-waiver clause and finding that acceptance of delayed payments did not constitute waiver); *Jacobs Plaza, Inc. v. Holland-David Enterprises, Inc.*, Nos. 2007-CA-357-MR, 2007-CA-360-MR, 2008 WL 1919099, *3 (Ky. Ct. App. May 2, 2008) (holding that plaintiff did not waive its right to the full amount of rent due by accepting partial payments because of a non-waiver clause).  As a result, Kentucky law does not preclude the application of Utah law to the non-waiver clause in the parties' Agreement.  *See Wise*, 780 F.3d at 718.

[10]    "[U]nder some circumstances, a no-waiver provision can itself be waived."  *ASC Utah*, 245 F.3d at 196.  Because Stratton has not raised this argument, the Court will consider the non-waiver clause as a factor in the waiver analysis.

consumer is indicative of a custom, . . . to forever relinquish the right to charge a consumer like Ms. Stratton contract interest." [*Id.*]

First, Stratton objects to Cloninger's opinion because "whether GEMB forever relinquished" its right to accrue interest "has no bearing on the case." [Record No. 61, p. 28] However, whether GE intentionally relinquished its right to collect prejudgment interest at the contractual rate is exactly the issue presented.[11]  Second, Stratton argues that Cloninger's opinion is irrelevant insofar as she comments on whether GE transferred to PRA the right to charge "contract interest up to the rate of 21.99 percent per year." [*Id.*, *referring to* Record No. 54-6, p. 20]  Stratton is correct in this regard—the issue is not whether PRA obtained the right to charge interest once it purchased the debt.  Instead, the question is whether PRA obtained the right to retroactively charge interest for the time period between charge-off and its purchase of the debt. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 540 (N.D. Ill. 2012).  Therefore, the Court has not considered Cloninger's opinion as it relates to whether PRA was permitted to retroactively add interest to Stratton's debt for the period pre-purchase.

Third, Stratton objects to the expert opinion as it relates to the construction of the Bill of Sale and Forward Flow Agreement.  [Record No. 61, p. 28]  The Court need not address this argument because it did not rely on Cloninger's opinion in interpreting those agreements. However, the Court notes that such an opinion appears to delve into an "ultimate legal issue" in the case, especially where the expert's report did not seek to clarify ambiguous terms.

---

[11]    Stratton seems to assume that GE's decision not to accrue interest post charge-off automatically means that GE waived its right to collect interest for the relevant time period.

*See, e.g.*, *In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 833 (N.D. Ohio 2010). [*See* Record No. 54-6, pp. 27–28.]

Fourth, the plaintiff avers that Cloninger's report is largely irrelevant because it does not address *in particular* GE's intent when it decided not to impose interest on her account. [Record No. 61, p. 29]  The Court has largely considered the expert's statements insomuch as they are corroborated by the case law and relevant statutes and regulations.   However, Cloninger's information regarding the trade and custom of the industry has some relevance in that it aids the Court in interpreting the meaning of GE's conduct.  *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997).

### 3.  Waiver

"Waiver is an intentional relinquishment of a known right.  It must be distinctly made, although it may be expressed or implied."  *Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 266 P.3d 671, 682 (Utah 2011) (citation omitted).  "Waiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract."  *Id.* at 682–83.  A party may expressly or impliedly waive its rights.  *Id.* at 683.

Stratton argues that because GE charged off her credit card account, it waived its right to collect interest at the contractual rate.  [Record No. 61, p. 16]  To support her position, Stratton notes that: (i) the account balance was $0.00 on December 19, 2008; (ii) GE did not impose any interest between November 21, 2008, and January 4, 2010; (iii) GE did not send Stratton periodic statements after December 2008; (iv) the amount due on the plaintiff's debt was the same when PRA acquired it as when GE charged-off the debt; and (v) PRA stated in

notices to Stratton that her balance was between $2,630.95 and $2,634.99, which does not include interest at the statutory or contractual rate.[12]  [*Id.*, pp. 17–21]

In the absence of substantial Utah precedent on the issue, the Court has reviewed the reasoning of other district courts.  First, because charging-off delinquent accounts is a regulatory requirement, "it is not a voluntary action of the creditor."  *Bunce v. Portfolio Recovery Assoc., LLC*, No. 14-2149-JTM, 2014 WL 5849252, *2 (D. Kan. Nov. 12, 2014) (citing Uniform Retail Credit Classification and Account Management Policy, 65 Fed Reg. 36903-01 (June 12, 2000)).  As a result, the fact that GE charged-off Stratton's account, in and of itself, does not mandate a finding of waiver.  *See id.*

With respect to GE's failure to send periodic statements, PRA argues that several potential explanations preclude a finding of waiver: (i) the creditor deemed the debt uncollectible; (ii) a delinquency action was commenced; or (iii) additional statements were precluded by statute.  [Record No. 84, p. 6]  Only the first explanation is relevant here. Stratton asserts that GE considered the debt to be collectible because it sold the debt to PRA for purposes of collection.  [Record No. 61, p. 23]  She claims that, as a result, GE's decision to forgo charging interest on a collectible debt is evidence that it intentionally relinquished its right to collect such interest.  On the other hand, the Sixth Circuit determined that GE

---

[12]      The plaintiff also asserts that prejudgment interest accrues only after demand for payment has been made.  [Record No. 61, p. 24]  However, in *Trail Mountain Coal Co. v. Utah Div. of State Lands and Forestry*, the Supreme Court of Utah held that prejudgment interest accrues from the date payments are due, not from the date that demand is made.  921 P.2d 1365, 1371 (Utah 1996) (citing *Consolidation Coal Co. v. Utah Div. of State Lands and Forestry*, 886 P.2d 514, 523 (Utah 1994) (addressing Utah Code § 15-1-1), *abrogated on other grounds by State ex rel. School & Inst. Trust Land Admin v. Mathis*, 223 P.3d 1119 (Utah 2009)).  The same goes for Kentucky law.  *See McElhinney v. Hosea*, Nos. 2011-CA-1217-MR, 2011-CA-1256-MR, 2013 WL 4779761, *3 (Ky. Ct. App. Sept. 6, 2013) (addressing Ky. Rev. Stat. § 360.010(1)) ("Prejudgment interest begins to accrue on the date a payment becomes due.")

considered the debt "uncollectible."  *Stratton*, 770 F.3d at 445.  Under the reasoning in *McDonald v. Asset Acceptance LLC*, which was cited in *Stratton*, 770 F.3d at 445, whether the creditor deemed the debt collectible is not relevant to the question of waiver.  *See McDonald*, 296 F.R.D. 513, 518 (E.D. Mich. 2013) (finding waiver even where company deemed the account "worthless").  Further, "periodic statements (or lack thereof) add nothing to the inquiry into whether [the creditor] applied interest" to Stratton's account after December 2008.  *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 543 (N.D. Ill. 2012); *see also Bunce*, 2014 WL 5849252, at *2.

Stratton's argument regarding an account balance of $0.00 is similarly unavailing. [Record No. 61, p. 21]  Because the Truth in Lending Act ("TILA") regulations required GE to send periodic statements if the account balance was over $1.00, this is essentially the same argument presented above.  *See* 12 C.F.R. § 226.5(b)(2)(i) (2005).  Likewise, Stratton's contention that GE's decision to not impose interest is evidence of waiver is, in reality, subsumed within the argument concerning periodic statements because the TILA regulations also required such statements when finance charges were imposed.  *See id.*; 12 C.F.R. § 226.4(b)(1).  As a result, the Court reviews the district court cases dealing with the main thrust of Stratton's argument: that GE's decision to charge-off Stratton's account and halt imposition of interest on it constitutes waiver of the right to collect interest at the agreed-upon rate.

In *McDonald*, the court concluded that the original creditors waived their right to collect contractual interest where: (1) the creditors charged off the accounts; (ii) the agreements between the creditors and the debt collectors specified that there was no "post

charge-off interest" included in the "unpaid balance" that was sold to the collectors; and (iii) there was testimony by the original creditors that they did not impose interest post charge-off to avoid the periodic statement requirement.[13]  296 F.R.D. at 524–25.

Similarly, in *Simkus v. Cavalry Portfolio Services, LLC*, the court determined that the plaintiff's factual allegations were "sufficient to support a claim that [the creditor] waived its right to charge interest after the charge-off . . ."  No. 11-cv-7425, 2012 WL 1866542, *4 (N.D. Ill. May 22, 2012).  In that case, two years after the bank charged-off the debt, its collection agency attempted to collect the debt at the same amount.  *Id.*  Further, five months later, it reported the same debt amount to Trans Union.  *Id.*  When the defendant purchased the debt from the bank, it again reported the same debt amount.  *Id.*  Thus, the court found that the plaintiff validly stated a claim against the defendant for charging interest that the bank may have waived.  *Id.*

The evidence presented demonstrates that the present action is distinguishable from *McDonald* and *Simkus*.  The situation presented here is similar to *McDonald* in that GE, the creditor, charged-off Stratton's account.  However, the agreement between GE and PRA does not demonstrate an intention of waiver in the way that the agreements in *McDonald* did.  *See McDonald*, 296 F.R.D. at 524.  While PRA contracted for the receivables as of the "Cut-

---

[13]     Because Stratton did not disclose any information regarding the lack of periodic statements in her responses to PRA's interrogatories, PRA argues that such evidence must be precluded.  [Record No. 84, p. 5, *referring to* Record No. 58-6, p. 6]  The plaintiff does not respond to this argument. [*See, generally*, Record No. 85.]  A party may not insert facts not disclosed during discovery into a response to a motion for summary judgment.  *See Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 451 (6th Cir. 2010).  As discussed above, the Court does not rely on this evidence in determining the question of waiver.  Stratton's argument about the lack of periodic statements essentially mirrors her argument about the $0.00 account balance, and the evidence about the $0.00 balance was properly disclosed.

off Date," the Forward Flow Agreement acknowledged that interest "may have accumulated after the Account's charge-off date."   [Record No. 61-3, p. 3]   On the other hand, in *McDonald*, the agreements between the creditors and debt-purchasers highlighted that post charge-off interest was not included and that the "primary purpose" of the sale was for collecting the unpaid balance.  *Id.*

Further, there is no testimony from GE that its policy was to waive contractual interest as a trade-off to avoid issuing periodic statements.  *Cf. McDonald*, 296 F.R.D. at 525. Most significantly, the credit card agreement at issue in *McDonald* did not contain a non-waiver clause, whereas PRA has pointed to a non-waiver clause that specifically referred to GE's ability to not impose charges without waiving them. [Record No. 54-3]

This action differs from *Simkus* in that the parties have presented no evidence that GE attempted to collect on the debt at an amount unchanged post charge-off.  *Cf. Simkus*, 2012 WL 1866542, at *4.  Additionally, GE did not report an unchanged debt amount to a credit bureau such as Trans Union.  *Cf. id.*  Moreover, *Simkus* did not contain an agreement with an enforceable non-waiver provision.  *See id.* at *4 n.4 (stating that a non-waiver clause might be relevant but that the defendant failed to provide it).

The plaintiff also claims that GE waived its right to collect interest at the contractual rate because it reduced her account balance to $0.00, meaning that there was no balance on which to compute the finance charge.  [Record No. 61, p. 21]  Specifically, she notes that her Account Statement on December 19, 2008, demonstrated a $0.00 "Balance Subject to Finance Charge."  [*Id.*, p. 17]  Stratton also highlights that the Credit Card Agreement calculated the finance charge by applying the periodic rate to the "balance subject to Finance

Charge." [Record No. 54-3] However, the relevant "balance" is the balance of the charge-off date. *See Miller v. Javitch, Block, & Rathbone, LLP*, 397 F. Supp. 2d 991, 1003 (N.D. Ind. 2005).

Finally, PRA's demand for a figure that did not include prejudgment interest is irrelevant to the question of whether GE waived its right to collect prejudgment interest. Because Stratton makes no claim that PRA waived its own rights to collect interest at the contractual or statutory rate, the Court need not address this issue. [*See, generally*, Record Nos. 10; 61.] Ultimately, Stratton's evidence is insufficient as a matter of law to demonstrate that GE waived its right to collect interest at the contractual rate post charge-off. Therefore, PRA did not seek to collect interest that was waived by its assignor.

### E. Violations of 15 U.S.C. §§ 1692f(1), 1692e(2)(A), and 1692(e)(5)[14]

The Fair Debt Collection Practices Act is broadly construed. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Its purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Thus, it is a strict liability statute. *Stratton*, 770 F.3d at 448–49 (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011)). Further, "[c]ourts must view any alleged violation through the lens of the least sophisticated consumer []—the usual objective legal standard in consumer protection cases." *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007) (internal quotation marks and citation omitted).

---

[14] PRA challenges other aspects of its liability under the FDCPA, such as whether Stratton's debt arises out of an appropriate transaction. [Record No. 63, p. 21] These arguments will be addressed below in the section concerning Stratton's motion for summary judgment.

Litigation may constitute a debt collection practice.  *See Stratton*, 770 F.3d at 450; *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615–16 (6th Cir. 2009).[15]  As a result, PRA's liability hinges on whether it had the right to collect prejudgment interest.  *See Stratton*, 770 F.3d at 451. Without the right to collect prejudgment interest at a rate of 8%, PRA would have attempted to collect interest that was not authorized by agreement or permitted by law.  *See* 15 U.S.C. § 1692f(1).  PRA would have also falsely represented the amount of Stratton's debt.  *See* 15 U.S.C. § 1692e(2)(A).  Further, the company would have threatened to take action that could not legally be taken.  *See* 15 U.S.C. § 1692(e)(5).

As outlined above, under Utah law, PRA had the right to seek statutory interest at a rate of 10%.  Further, because Stratton cannot prove that GE waived its contractual or statutory right to collect prejudgment interest and does not allege that PRA waived such rights, PRA's demand for prejudgment interest at a rate of 8% was authorized by either the

---

[15]     The defendant argues that the Sixth Circuit's interpretation of the FDCPA in *Stratton* is not the law of the case.  *See Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312–13 (6th Cir. 1997) (dictum is not law of the case).  [Record Nos. 54, p. 3; 63, p. 20]  However, the court's conclusion that dismissal was inappropriate necessarily rested on its determination that an assignee can violate the FDCPA by demanding interest that was waived by the assignor.  Thus, the Court's conclusions about the FDCPA were not dictum.  *See also Wise*, 780 F.3d at 713.

        In any event, the Court agrees with those conclusions.  Although PRA highlights district court cases holding that a debt collector does not violate the FDCPA by attempting to collect interest waived by its assignor, the Court does not find those cases persuasive.  [Record No. 54, p. 25]  Due to the FDCPA's placement of the burden on the debt collector, it is the debt collector's responsibility to discover whether its predecessor waived rights to prejudgment interest.  *See Stratton*, 770 F.3d at 451.  With respect to 15 U.S.C. § 1692f(1), interest is no longer authorized by the agreement or permitted by law if it has been waived.  *But see Simkus*, 12 F. Supp. 3d at 1110.  Regarding § 1692e, *Miljkovic v. Shafritz and Dinkin, P.A.* is not persuasive because in that case, the defendant did not "erroneously state the amount of the debt owed by" the plaintiff.  791 F.3d 1291, 1306 (11th Cir. 2015).  [Record No. 54, p. 27]  Further, to the extent that *Miljkovic* discussed  § 1692f, it merely focused on that provision as a "catch-all" for unfair and unconscionable conduct, instead of addressing the particular section devoted to collecting unauthorized interest.  *See* § 1692f(1).

Credit Card Agreement or Utah law.  *See* 15 U.S.C. § 1692f(1).  Likewise, PRA threatened only to take action that could legally be taken.  *See* 15 U.S.C. § 1692(e)(5).

While PRA technically represented that the amount of the debt was less than what was actually owed, the protections of the FDCPA are not required in such a circumstance. *See Lane v. Gordon*, Civil No. 10-793-KI, 2011 WL 488901, *1 (D. Or. Feb. 7, 2011); 15 U.S.C. § 1692e(2)(A).  Because the undisputed facts show that PRA did not violate the FDCPA by attempting to collect interest to which it was not entitled, summary judgment will be granted in PRA's favor.

### F.      Bona Fide Error Defense

Even if PRA violated the FDCPA by demanding prejudgment interest to which it was not entitled, it asserts that it is entitled to the bona fide error defense in 15 U.S.C. § 1692k(c). Under the FDCPA, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."   15 U.S.C. § 1692k(c).  This affirmative defense applies to both mistakes of state law and clerical errors.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 580 n.4 (2010); *Wise*, 780 F.3d at 713.  A debt collector claiming this defense must prove that: (1) the violation was unintentional; (2) the violation was the result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid such an error.  *Jerman*, 559 U.S. at 576.

Although the Court need not resolve whether PRA has demonstrated its entitlement to the bona fide error defense, it notes that PRA appears to have provided sufficient evidence

that it maintained procedures reasonably adapted to avoid errors regarding demands for prejudgment interest.   For example, the Training Manual indicates that PRA employees complete a two-week program concerning the FDCPA and state collections law compliance. [Record No. 55, p. 6]   Further, collectors must complete a mandatory assessment and an "Annual FDCPA Recertification Assessment."   [*Id.*, p. 10]   Additionally, the Training Manual includes information on calculating interest.   [*Id.*, p. 17]

In its responses to Stratton's interrogatories, PRA also stated that it "engages in legal monitoring of applicable statutory amendments and case law," and that its attorneys "regularly meet to discuss case law and statutes concerning the FDCPA."  [Record No. 54-7, p. 6]  Thus, it appears that PRA maintained procedures reasonably adapted to avoid state law errors.  *See Johnson v. Riddle*, 443 F.3d 723, 730 (10th Cir. 2006) (focusing on procedures reasonably adapted to avoid the core legal error that occurred).   However, PRA's proof regarding the other two elements of the bona fide error defense is too speculative.  *See Slick v. Portfolio Recovery Assoc., LLC*, 111 F. Supp. 3d 900, 908 (N.D. Ill. 2015) (PRA "has not provided testimony from anyone with firsthand knowledge of the way that PRA handled [the plaintiff's] account"); *Litt v. Portfolio Recovery Assoc., LLC*, No. 13-12462, 2015 WL 7351781, *13−14 (E.D. Mich. Nov. 20, 2015).   The defendant does not provide evidence concerning how Stratton's account was handled.  Instead, PRA merely argues that whatever factual or legal mistake occurred must have resulted from a misunderstanding of either Kentucky law or the meaning of GE's conduct.  [Record No. 54, p. 30]

- 32 -

### G.      Stratton's Request for Summary Judgment

Stratton has also moved for summary judgment, arguing that the undisputed facts demonstrate as a matter of law that PRA violated the FDCPA.  [Record No. 56-2, p. 1]  An FDCPA claim consists of four elements: (i) the plaintiff must be a "consumer;" (ii) the debt must arise out of a transaction entered primarily for personal, family, or household purposes; (iii) the defendant must be a "debt collector;" and (iv) the defendant must have violated a provision of the FDCPA.  *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

A consumer is a "natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3), or the spouse, parent, guardian, executor, or administrator of a consumer, 15 U.S.C. § 1692c(d).  A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," with certain exceptions.  15 U.S.C. § 1692a(6).  Here, Stratton provides evidence for the first two elements through an affidavit.  [Record No. 56-2, p. 8]  PRA's only challenge to those elements is that Stratton's affidavit was not physically signed.  [Record No. 63, p. 22]  However, Stratton filed an amended affidavit with a written signature.  [Record No. 73-1, p. 2]  As a result, the Court may consider the affidavit as evidence establishing the FDCPA claim elements.  *See Thomas and King, Inc. v. Jaramillo*, Civil Action No. 08-191-JBC, 2009 WL 649073, *3 (E.D. Ky. Mar. 10, 2009) ("Jaramillo's attorney stated in that pleading that a signed version of the declaration would be filed when he received it from Jaramillo . . . .  No such signed

declaration has been filed with this court.").  The plaintiff establishes that she is a "natural and individual person" and that she used the credit card at issue "solely for personal, family, or household purposes."  [Record No. 73-1, ¶¶ 2, 5]

For the third element, Stratton points to PRA's responses to her requests for admissions.  [Record No. 56-2, p. 9]  PRA admitted that "in certain circumstances it acquires consumer debts that have been charged off by the original creditor."  [Record No. 56-4, p. 2]  Further, PRA stated that "it has filed lawsuits in Kentucky to collect on accounts that it has purchased from original creditors."  [*Id.*, p. 3]  Thus, Stratton has presented evidence that PRA is a debt collector within the meaning of the FDCPA.  *See, e.g.*, *Riddle v. Portfolio Recovery Associated, Inc.*, Civil Action No. 12-82-DLB-JGW, 2014 WL 1252610, *1 (E.D. Ky. Mar. 26, 2014); *Thomas v. Portfolio Recovery Associates, LLC*, No. 12cv1188-WQHWMc, 2013 WL 4517175, *5 (S.D. Cali. Aug. 12, 2013).

Because PRA does not present any evidence contradicting the assertions that Stratton is a consumer, PRA is a debt collector, and Stratton's debt arose out of an appropriate transaction, these facts are sufficiently established for the purposes of summary judgment.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  However, because Stratton has failed to demonstrate that PRA violated the FDCPA (and instead, PRA has demonstrated its entitlement to relief), the Court will deny her motion for summary judgment.[16]

_____

[16]      Stratton asserts that PRA's response in opposition to her motion for summary judgment was late.  [Record No. 85, p. 1]  However, PRA properly demonstrates in its sur-reply that the response was filed in accordance with Rule 6(d) of the Federal Rules of Civil Procedure, Local

## IV.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.      Plaintiff Dede Stratton's Motion to Strike [Record No. 62] is **DENIED**.

2.      Stratton's Motion for Summary Judgment [Record No. 56] is **DENIED**.

3.      Defendant Portfolio Recovery Associates, LLC's Motion for Summary Judgment [Record No. 54] is **GRANTED**.

4.      Stratton's claims that PRA violated the Fair Debt Collection Practices Act are **DISMISSED**, with prejudice.   Further, this action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

5.      A Judgment shall be entered this date.

This 21st day of March, 2016.



Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**

---

Rule 7.1(c), and the Eastern and Western Districts of Kentucky's Joint General Order 11-02 § 4(f).  [Record No. 88]